1

**PETERSON WATTS LAW GROUP, LLP**
GLENN W. PETERSON, ESQ. (SBN 126173)
DANIEL N. BALLARD, ESQ. (SBN 219223)
2267 Lava Ridge Court, Suite 210
Roseville, California 95661
Phone: (916) 780-8222
Fax:    (916) 780-8775
gpeterson@petersonwatts.com
danielballardlaw@gmail.com

*Attorneys for*
*Casablanca Design Center, Inc.*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| CASABLANCA DESIGN CENTER, INC., a California corporation,<br><br>                              Plaintiff,<br><br>vs.<br><br>CLOSETS BY DESIGN, INC., a California corporation, CBD FRANCHISING, INC., a California corporation, CLOSET WORLD, INC., a Delaware corporation, FRANK M. MELKONIAN, an individual, and DOES 1 – 10.<br><br>                              Defendants. | Case No. 2:23-CV-02155-ODW-PD<br><br>**FIRST AMENDED COMPLAINT FOR:**<br>**1. FALSE ADVERTISING,**<br>**2. CONTRIBUTORY FALSE ADVERTISING, and**<br>**3.  RICO ACT VIOLATIONS.**<br><br>**JURY TRIAL DEMANDED** |

First Amended Complaint                    i

1

**TABLE OF CONTENTS**

2   I.    Nature of the Action .................................................................1

3   II.   Introduction ...........................................................................1

4   III.  The Parties .............................................................................3

5   IV.  Jurisdiction and Venue ..........................................................4

6   V.   Frank M. Melkonian ..............................................................5

7   VI.  The Corporate Defendants' Enterprise and Common Purpose ...................7

       A.    Closet World ..................................................................8

       B.    Closets by Design ..........................................................10

       C.    CBDF ............................................................................12

           (i).    Closets by Design and Closet World are CBDF "Affiliates" ............................................................13

           (ii).   CBDF Controls Closets by Design® Pricing .........................15

           (iii).  CBDF Controls Closets by Design® Print Advertising ..........16

           (iv).  CBDF Controls Closets by Design® Internet Advertising .....17

           (v).   CBDF's Advertising Expenditures .......................................18

       D.    Other Joint Conduct .....................................................18

   VII. The False Advertising ...........................................................19

       A.    Previous Challenges to the False Advertising .................19

       B.    The Advertisements ......................................................20

       C.    The Harm Caused by the False Advertisements .............23

   VIII. The Investigation ...............................................................25

       A.    Closets by Design ..........................................................25

           (i).    *Grevle v. Closets by Design* ............................................25

           (ii).   Rivas .........................................................................26

           (iii).  Johnson .....................................................................26

           (iv).  Dennis .......................................................................27

               a.    The Internet Archive Data ......................... 27

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

          b.     The Social Media Information ..................................... 31

     (v).   Ballard..........................................................................34

  B.     Closet World .........................................................................36

FIRST CAUSE OF ACTION ...........................................................39

SECOND CAUSE OF ACTION .......................................................41

THIRD CAUSE OF ACTION...........................................................42

PRAYER FOR RELIEF ...................................................................43

Casablanca Design Center, Inc. ("Casablanca") brings this action against Closets by Design, Inc., CBD Franchising, Inc. ("CBDF"), Closet World, Inc., and Frank M. Melkonian and allege as follows:

## I.     Nature of the Action

1.      This is a false advertising lawsuit between competitors that arises under the Lanham Act (15 U.S.C. §1125(a)(1)(B)) and the Racketeer Influenced and Corrupt Organizations Act ("RICO") (18 U.S.C. §1962(a), (b), (c)).

2.      Casablanca directly competes against Closets by Design and Closet World for customers in Southern California who may purchase custom designed interior doors and organizers for closets, offices, and garages. All three companies design, fabricate, and install those products. The customers for those products are mainly homeowners and residential rental property owners.

3.      Casablanca brings this action to stop Closets by Design, CBDF, and Closet World from continuing to distribute and publish deceptive discount price advertising for their products and to request remedies for their past deceptive price advertising, all of which was overseen by Frank Melkonian.

## II.     Introduction

4.      Judge Stephen Reinhardt aptly described the wrong alleged here: "Most consumers have, at some point, purchased merchandise that was marketed as being 'on sale' because the proffered discount seemed too good to pass up. Retailers, well aware of consumers' susceptibility to a bargain, therefore, have an incentive to lie to their customers by falsely claiming that their products have previously sold at a far higher 'original' price in order to induce customers to purchase merchandise at a purportedly marked-down 'sale' price. Because such practices are misleading—and effective—the California legislature has prohibited them." *Hinojos v. Kohl's Corp.,* 718 F.3d 1098, 1101 (9th Cir.2013)

5.      The deceptive discount price advertisements Casablanca complains of violate the Lanham Act and California law. 15 U.S.C. §1125(a)(1)(B); Bus. &

First Amended Complaint                    1

1   Prof. §§7161(a), 17500, 17501 and Cal. Code Regs., Tit. 4, §1302; Civ. Code
2   §1770(a)(9),(13).[1] They violate the Federal Trade Commission Act which declares
3   it unlawful "to disseminate, or cause to be disseminated, any false advertisement."
4   15 U.S.C. §52(a). They are specifically prohibited by the Federal Trade
5   Commission ("FTC") in its Guides Against Deceptive Pricing. 16 C.F.R. §§233.1,
6   233.5. Moreover, when a sale does occur, the purchase price is a material term in
7   the contract and so the false representation undermines the contract. Using the mail
8   and worldwide web to distribute and publish such false advertising is mail and wire
9   fraud. 18 U.S.C. §§1341, 1343. Creating an enterprise for the common purpose of
10   distributing and publishing such false advertising violates RICO. 18 U.S.C.
11   §1962(a), (b), (c).

12         6.     During at least the past two years, Closets by Design, CBDF, and
13   Closet World have collaborated to, and have, distributed and published throughout
14   Southern California many tens of thousands of advertisements that offer their
15   products at a discount—always at least "40% Off"—when, in fact, those products
16   are *neither advertised nor sold* at a higher, non-discount list price. Each "<u>Former</u>
17   <u>Price Comparison</u>" advertisement is false advertising because the representation
18   that a discount is being offered is literally false.

19         7.     Embedded in each advertisement is *<u>a second and separate act</u>* of false
20   advertising. In each advertisement, Closets by Design, CBDF, and Closet World
21   assert that their discount price "sale" will end on a date certain, or is a new sale,
22   when, in fact, the same discount price "sale" has continued without interruption for
23   years. The advertisements for their "<u>Continuous Sale</u>" are false advertising because
24   each sale expiration date is literally false as is every statement that the sale is new
25   or being offered to celebrate a particular holiday or event.

---

[1] And may expose the Closets by Design and Closet World's sale designers to personal liability in California and elsewhere. See, e.g., Bus. & Prof. §17500.3(b).

8.     If not facially literally false, every one of the corporate Defendants' discount offers, and every statement in their advertising that their respective sale is new or will soon end, is either false by implication or true but likely to mislead or confuse consumers.

9.     Home Organizers, Inc. is the parent company of Closets by Design, CBDF, and Closet World, each of which are all wholly owned subsidiaries. All four companies have their principal place of business at the same location and Frank Melkonian is the CEO of all four. The corporate Defendants admit they are "affiliated" and, as alleged below, they coordinate their advertising. To reasonable consumers, Closets by Design and Closet World appear to be competitors. They are, in fact, collaborators.

10.     The corporate Defendants have intentionally created an enterprise through which they act for the common purpose of decreasing their customer acquisition costs and increasing their sales by diverting business from their competitors through the distribution and publication of advertising via the mail and worldwide web that each Defendant knows is literally false.

11.     The corporate Defendants' concerted, fraudulent conduct over the course of at least two years is mail and wire fraud and is a pattern of racketeering activity. The object of their fraud is the money each receives from sales to customers who their false advertising diverts from their competitors.

### III.     The Parties

12.     Plaintiff Casablanca is a California corporation with its principal place of business in Torrance, California. Casablanca does business as "Interior Door & Closet Company." Casablanca conducts its business affiliated with One Day Enterprises, LLC, the manufacturer of the custom doors and closets Casablanca sells.

13.     Defendant Closets by Design is a California corporation that has its principal place of business at 3860 Capitol Avenue in Whittier, California. Closets

1   by Design licenses to CBDF the right to use and sublicence its Closets by

2   Design®[2] trademark.

3       14.   Defendant CBDF is a California corporation that, according to its

4   most recent Statement of Information filed with the California Secretary of State,

5   also has its principal place of business at 3860 Capitol Avenue in Whittier,

6   California. CBDF is a licensed franchisor that sublicenses the Closets by Design®

7   trademark to independently owned and operated Closets by Design® franchisees

8   throughout the United States.

9       15.   Defendant Closet World is a Delaware corporation that also has its

10  principal place of business at 3860 Capitol Avenue in Whittier, California.

11      16.   Defendant Frank M. Melkonian, aka Varant Melkom Agob, is an

12  individual who resides in Los Angeles County. Melkonian is the Chief Executive

13  Officer of Closets by Design, CBDF, and Closet World and is the Chairman and

14  CEO of Home Organizers.

15      17.   The true names and capacities of the Defendants sued as Does 1

16  through 10 are currently unknown and so Casablanca sues them under fictitious

17  names. Casablanca is informed and believes that each of these Defendants is

18  responsible in some manner for the wrongful acts alleged and that each caused

19  Casablanca harm.

20      **IV.   Jurisdiction and Venue**

21      18.   This Court has subject matter jurisdiction under 15 U.S.C. §1121(a)

22  (Lanham Act), 18 U.S.C. §1965(a) (RICO), and 28 U.S.C. §1331 (federal

23  question). This Court has personal jurisdiction over each corporate Defendant

24  because each has its principal place of business in this district. In addition, each

25

26  [2]   CBDF distinguishes between Closets by Design, Inc., the *corporation*, from

27  the "Closets by Design" *brand* by affixing the trademark symbol to the latter
    ("Closets by Design®"). Casablanca adopts that distinction and designation as well.

28

1    Defendant engages in substantial business in this district, and each have
2    committed, and are now committing, Lanham Act and RICO violations that have
3    caused, and are now causing, Casablanca harm in this district.

4    　　　　19.   Venue is proper in this judicial district under 28 U.S.C. §1391(b)
5    because each Defendant resides in this district and is where a substantial part of the
6    events giving rise to Casablanca's claims occurred.

7    **V.   Frank M. Melkonian**

8    　　　　20.   Melkonian is the guiding spirit behind all the corporate Defendants'
9    false advertising. He is contributorily liable under the Lanham Act for all the false
10   advertising complained of herein. Casablanca anticipates that discovery will reveal
11   facts that show Melkonian may also be liable under RICO for conspiring with the
12   corporate Defendants to further their racketeering activity. 18 U.S.C. §1962(d).

13   　　　　21.   Melkonian has been actively involved with advertising since at least
14   January 1979 when, according to the profile he published on LinkedIn, he served
15   as the President and CEO of Value Mailer Marketing, Inc., positions he held until
16   May 1990. On information and belief, during those eleven (11) years, Melkonian
17   created, helped create, sold, and distributed advertising.

18   　　　　22.   Melkonian is the <u>CEO of all three corporate Defendants and their
19   parent company</u>, Home Organizers. He founded Closet World in 1991 and has
20   been its CEO since. He is, and at all relevant times has been, the CEO of Closets
21   by Design. He was its Chairman in May 2001 and continues to serve on its board.
22   He has been the Chairman and CEO of CBDF since 2007. He has been the
23   Chairman and CEO of parent company Home Organizers since 2001.

24   　　　　23.   As each company's CEO, and based on his interactions with
25   Casablanca's principals and affiliates, Melkonian actively manages the three
26   corporate Defendants and Home Organizers and has the authority and ability to
27   control each company.

28   　　　　24.   Melkonian was CEO of Closet World when, sometime before 2000, it

First Amended Complaint　　　　　　　5

began publishing <u>the very same</u> Former Price Comparison and Continuous Sale false advertising that Casablanca complains of here. As a result, the Orange County District Attorney filed suit against Closet World. *People v. Closet World*, Case No. 00CC07660 (Orange County Superior Court, 2000). **Exhibit 1**. Melkonian was personally served the complaint and signed, on Closet World's behalf, a stipulated judgment containing a <u>permanent injunction</u> prohibiting Closet World and "all officers, employees, representatives, persons, corporations or other entities acting by, through, or under or on behalf of Closet World" from continuing to publish those two forms of false advertising throughout California (hereafter, the "False Advertising Injunction"). **Exhibit 2.**

25.     Knowledge of the False Advertising Injunction is imputed to Closets by Design and CBDF by way of Melkonian serving as their CEO and sitting on their Boards. Actual knowledge was also directly conveyed to Closets by Design via proceedings the California Contractors State License Board ("CSLB") initiated against Closets by Design and Closet World (Case Nos. S2003-249, S2005-203, S2005-219). CLSB's Accusations in those proceedings, filed in 2003 and 2005, quote extensively from the False Advertising Injunction. Closets by Design participated in those proceedings.

26.     As CEO, and as the architect of Closet World's past Former Price Comparison and Continuous Sale false advertising, and as an acting manager of each corporate Defendant, Melkonian oversees each of their advertising, including the Former Price Comparison and Continuous Sale false advertising complained of here, which he not only <u>knows is unlawful</u> but which <u>he</u> and Closet World are already <u>enjoined from publishing</u>. **Exhibit 2.** As CEO, Melkonian is contributing to each corporate Defendant's false advertising by knowingly inducing it, causing it, or materially participating in it.

27.     Closets by Design and CBDF are "acting by, through, or under or on behalf of Closet World" to distribute and publish Closet World's already-enjoined

First Amended Complaint                         6

false advertising. Each Defendant, therefore, has violated, and is currently violating, the False Advertising Injunction.

28.     The corporate Defendants' past and current distribution and publication of their false advertising has been willful and malicious for the deliberate purpose of injuring their competitors, including Casablanca.

29.     The corporate Defendants' past and current distribution and publication of their literally false advertisements was done to intentionally mislead consumers. This Court should presume, therefore, that consumers were, in fact, deceived and the corporate Defendants bear the burden to prove otherwise. *William H. Morris Co. v. Group W, Inc.,* 66 F.3d 255, 258 (9th Cir. 1995).

## VI.    The Corporate Defendants' Enterprise and Common Purpose

30.     The corporate Defendants have created an enterprise for the common purpose of *decreasing* the customer acquisition cost for Closets by Design, all the Closet by Design® franchisees, and Closet World and *increasing* all their sales by distributing and publishing advertising via the mail and worldwide web that each Defendant knows is literally false. Those companies' competitors are harmed by this false advertising, including Casablanca, which has been, and is now, directly harmed by a loss of sales, the expenditure of time and money to counteract the false advertising, and diminishment of its goodwill.

31.     CBDF publishes an annual Franchise Disclosure Document ("FDD") that contains, among other information, its Franchise Agreement, Asset Purchase Agreement, and Notes to the Financial Statements. Hereafter, when Casablanca quotes or cites information CBDF published in those documents those Casablanca allegations serve not only as allegations that the document contains the quoted or cited information but that the CBDF-sourced information is, in fact, accurate and reflects its actual relationship with its franchisees, Closets by Design, and Closet World.

/ / /

**A.**   <u>**Closet World**</u>

32.   Closet World was formed as "CWI Acquisitions, Inc." by Melkonian in 1991. He changed its name to Closet World, Inc. in March 2000. At all relevant times, Closet World has had four (4) locations: Whittier, Vista, and Hayward, California and Las Vegas, Nevada.

33.   CBDF asserts in its 2020, 2022, and 2023 FDD's that it has the right to sell other types of franchises. Immediately thereafter CBDF asserts that <u>Closet World is a CBDF "affiliate"</u> that owns four (4) locations "*that are equivalent to those offered under this Disclosure Document* under the mark 'Closet World'." (emphasis added). CBDF then asserts, on behalf of Closet World, that Closet World "has no current plans to operate more company-owned locations or to offer franchises."

34.   The content and appearance of Closet World's closetworld.com website, its social media, and advertising is in all material respects the same as Closets by Design's closetsbydesign.com website, social media, and advertising.

35.   Closet World advertises its products using, among many other means, advertising "wraps" inside which are advertising flyers for various retailers, all of which are inserted as a package into newspapers at least weekly. The corporate Defendants create their wrap with the front cover being an advertisement for Closet World and the back cover an advertisement for Closets by Design. Appearing on the Closet World advertisement is an embedded Closets by Design advertisement. Closets by Design claims copyright in the entire wrap, as evidenced by its copyright notice. **Exhibit 3.** These joint advertising wraps have been, and are now, distributed through the Los Angeles Times and, on information and belief, other newspapers as well.

36.   Closet World also advertises on Google's search engine platform. Google's Ads Transparency Center reveals that every Closet World advertisement <u>originates from Closets by Design</u>, which Google identifies as the "advertiser."

1    **Exhibit 4.** Closet World's false advertising via Google has been viewed numerous
2    times by Southern California residents and is currently viewable in Southern
3    California.

4        37.   Closet World also advertises through Meta Platforms, Inc., ("Meta")
5    the owner of the Facebook and Instagram social media platforms. Closet World's
6    false advertising via Facebook and Instagram has been viewed numerous times by
7    Southern California residents and is currently viewable in Southern California.
8    Closet World's advertisements routinely uses the same <u>bolded advertising phrases</u>
9    as Closets by Design's advertisements. For example, both routinely contain the
10   phrases "We Work With Any Budget" and "Our Best Offer is Back." The
11   purported <u>expiration date</u> for both companies' discount "sale" is also routinely the
12   same. Both companies' respective advertisements are routinely <u>served to viewers</u>
13   <u>in tandem</u>; that is, one company's advertisement is followed in the viewer's stream
14   of posts by the other's advertisement exactly three posts later. On information and
15   belief, the corporate Defendants' <u>have coordinated their social media targeted</u>
16   <u>advertising</u> by informing Meta that Closet World and Closets by Design are
17   "partners," or are otherwise affiliated, and instructed Meta to serve their respective
18   advertisements to viewers who have previously clicked on *either* company's
19   advertisement or visited *either* company's website.

20       38.   Closet World and Closets by Design intentionally harmonize the
21   content and publication of their respective social media advertising.

22       39.   On information and belief, Closet World and Closets by Design have
23   a financial relationship to account for all the above-described joint advertising.

24       40.   In addition to its collaboration with Closets by Design, Closet World's
25   other roles in this enterprise are creating, distributing, and publishing the false
26   advertising, interacting directly with potential customers by, among other conduct,
27   presenting them with fictitious "list prices" for its products along with a fraudulent
28   discount from that price, and to sell its products.

**B.**   <u>**Closets by Design**</u>

41.   Closets by Design and CBDF work closely together to create, manage, distribute, and publish the advertising for Closets by Design and the Closets by Design® franchisees.

42.   Closets by Design was originally formed as "CBD Acquisitions, Inc." in February 2001. Melkonian changed its name to Closets by Design, Inc. in May 2001.

43.   Closets by Design is not a Closets by Design® franchisee. Closets by Design owns the Closets by Design® trademark and its registration which lists September 1982 as the first date that name was commercially used as a mark. Closets by Design licenses the mark to CBDF and, as licensor, Closets by Design has the duty to control the quality of the products that are sold under the mark. *FreecycleSunnyvale v. Freecycle Network*, 626 F.3d 509, 515-16 (9th Cir.2010).

44.   Closets by Design owns the exclusive right to sell Closets by Design® products in Southern California. Closets by Design owns and operates three (3) outlets: in Gardena, Vista, and Oakland, California. Closets by Design also <u>jointly owns six (6) other outlets with CBDF</u>. CBDF refers to these jointly owned, non-franchised outlets in its FDD's as "Company Owned Outlets."

45.   Closets by Design owns, operates, and publishes advertising on its closetsbydesign.com website. The website has been viewed numerous times by residents of Southern California and is currently viewable in Southern California. Closets by Design claims copyright ownership in each webpage. It declares that all the trademarks displayed on the site are registered by Closets by Design and that it owns all the photographs, none of which may be reproduced or used in any way without its written consent.

46.   Closets by Design's website is the means <u>CBDF uses</u> to advertise its Closets by Design® franchise opportunities and is one way CBDF uses to advertise its franchisees' businesses.

47.     Closets by Design publishes on its website comprehensive, multi-page guidance on CBDF's franchise application process.

48.     Closets by Design publishes a "Locations" page on its website listing sixty (60) geographic areas in the United States. **Exhibit 5.** Each listed area contains a hyperlink that resolves to a dedicated, internal page on the website that displays the phone number of the CBDF franchisee doing business in that area and the products it offers. CBDF terms this promotional webpage a "click through subpage."

49.     Closets by Design publishes a "Schedule Requests" section on its website that any visitor throughout the United States may use to contact Closets by Design so it can schedule an appointment with that potential customer and itself <u>or with the geographically appropriate Closets by Design® franchisee.</u>

50.     Closets by Design publishes a "Connect With Us" section on its website that lists YouTube, Facebook, Twitter, and Instagram. The name of each social media platform contains a hyperlink to the Closets by Design account on that platform. On each platform Closets by Design publishes a hyperlink back to the homepage of its website.

51.     Each Closets by Design® franchisee directly benefits from Closets by Design and CBDF's false advertising because (1) the 40% Off sale offer is published on each of their click through subpages on Closets by Design's website, (2) Closets by Design provides each franchisee with customer scheduling assistance via its website, and (3) Closets by Design publishes its 40% Off sale offer through its social media accounts viewable by potential customers in the geographic area serviced by each franchisee. A representative sample of the first page for each of the franchisee's click through subpage is attached as **Exhibit 6**.

52.     According to Google's Ad Transparency Center, <u>Closets by Design is the "advertiser" of Closet World's sponsored advertising</u> on its search engine platform. **Exhibit 4.** Given Closets by Design's knowledge of the False

1    Advertising Injunction and acting as Closet World's advertiser for that company's

2    advertising via Google, Closets by Design is "acting by, through, or under or on

3    behalf of Closet World" and so *is bound by and violating* the False Advertising

4    Injunction.

5    **C.    CBDF**

6    53.    CBDF was also formed in February 2001. CBDF asserts in its 2023

7    FDD that it acquired the assets of its predecessor Closets By Design Franchising,

8    LLC, which, CBDF asserts, first began selling Closets by Design franchises in

9    January 1998.

10    54.    CBDF asserts in its 2023 FDD that in April 2001 it acquired a license

11    from Closets by Design to use and sublicense its Closets by Design® trademark.

12    CBDF asserts the license is exclusive, perpetual, worldwide, and terminable only if

13    CBDF becomes bankrupt, materially breaches, or sells substantially all its assets or

14    50% or more of its voting stock to an unaffiliated third party.

15    55.    CBDF asserts in its 2023 FDD that in June 2001 it began offering

16    Closets by Design® franchises for sale for the operation of retail outlets that sell,

17    manufacture, and install closets, home/office organizers and related products.

18    56.    CBDF asserts in its 2023 FDD that at the end of 2022 there were

19    seventy-two (72) Closets by Design® franchises in the United States. Franchisees

20    are required to do business under the assumed business name "Closets By Design."

21    Franchise Agreement at ¶15.05.

22    57.    CBDF's 2020, 2022, and 2023 FDD's reveal that CDBF charged and

23    received from each franchisee a monthly "Continuing Royalty" of the greater of

24    6.75% of the franchisee's previous month's gross revenues or a minimum royalty

25    of $3,000. CBDF's monetary liability for this false advertising enterprise is, at

26    least, all the profits it received from its franchisees' continuing royalty payments.

27    15 U.S.C. §1117(a).

28    58.    CBDF asserts in its 2023 FDD that at the end of 2022 there were six

(6) Closets By Design® outlets "Owned by CBDI and CBDF." The acronym "CBDI" denotes Closets by Design. CBDF refers to these non-franchised outlets as "Company Owned Outlets." CBDF asserts these jointly-owned outlets are operated by Closets by Design. As joint owner of these Closets By Design® outlets, CBDF is directly liable for their false advertisements.

### (i).   Closets by Design and Closet World are CBDF "Affiliates"

59.    CBDF asserts in its 2020, 2022, and 2023 FDD's that Closets by Design and Closet World are CBDF "Affiliates." See, FDD Item 1 for Closets by Design and FDD Item 12 for Closet World.

60.    CBDF's Franchise Agreement attached to those FDD's contains many provisions that bind its Affiliates, confer rights to its Affiliates, and protect its Affiliates. As CBDF Affiliates, Closets by Design and Closet World are third party beneficiaries to the Franchise Agreement, or are otherwise privileged under that Agreement, and are entitled to enjoy, and do enjoy, certain contractual rights and protections under that Agreement.

61.    CBDF's Franchise Agreement declares: "Within the Territory, we, our affiliates, subsidiaries and designees (together, the "Affiliates") will not operate a Company-owned business of the type franchised under this Agreement under the Proprietary Marks, so long as you are not in default under this Agreement and all other related agreements, and except as provided in Section 3.05 ('Rights We Reserve')." ¶3.02 (emphasis added).

62.    CBDF's Franchise Agreement contains a section entitled "Rights We and our Affiliates Reserve." ¶3.05. That section lists various rights and is prefaced by the declaration: "You will only have the right to operate the franchised Business subject to the terms and conditions of this Agreement. We specifically reserve all other rights to ourselves and our Affiliates. For example, and without limitation, we and our Affiliates have the right, now or in the future: ...." ¶3.05 (listing rights) (emphasis added). One right most relevant is the right "[t]o offer and sell services

and products within the Territory that is not part of the Closets By Design System through any distribution method, exploiting our and our Affiliates' Proprietary Marks, name, reputation and know-how." *Id*. (emphasis added).

63.   CBDF's Franchise Agreement declares: "We and our Affiliates have the right, now or in the future, both within or outside the Territory, to own and/or operate one or more businesses virtually identical to the Business licensed to you under this Agreement (each, a 'Company Business')." ¶3.06A (emphasis added).

64.   CBDF's Franchise Agreement declares: "Confidential Information includes (without limitation) all information, knowledge, know-how, techniques and information that we, our Affiliates, or their officers, contractors, employees and/or designees, designate as confidential." ¶12.01 (emphasis added).

65.   CBDF's Franchise Agreement declares that upon termination, the franchisee shall "not make any statements, directly or indirectly, to any person or entity which would disparage, ridicule, embarrass, challenge, criticize or cast in a negative light us; any of our Affiliates; our or our Affiliates' officers, directors, shareholders, employees or contractors; any franchisee of ours or any Affiliate." ¶18.01(19).

66.   CBDF's Franchise Agreement prohibits franchisees, without CBDF's prior approval, from making any statements "to any media representative or any other third party (except for persons considering purchasing a Closets By Design franchise) relating to the contents of this Agreement, to us or to any of our Affiliates." ¶8.14.

67.   CBDF's Franchise Agreement discloses that CBDF "and/or our affiliates" may receive revenue from the suppliers that CBDF designates, approves, or recommends its franchisees use based on the suppliers' prospective or actual dealings with the franchisees. ¶8.06(D).

68.   CBDF's 2023 FDD asserts that: "We and our affiliates have no past practice or future intent of selling, assigning or discounting franchisees' financing

arrangements to a third party."

69.     CBDF admits Closet World is its Affiliate and, through Melkonian, CBDF has long known of the False Advertising Injunction. Nonetheless, in April 2019, CBDF asserted in a public document that neither it "nor any of its parent companies, sister entities, or <u>affiliates</u> have ever been compelled by a court order to alter their advertising practices." (emphasis added). That assertion is false.

**(ii).   <u>CBDF Controls Closets by Design® Pricing</u>**

70.     CBDF's Franchise Agreement reserves to CBDF "rights with respect to the pricing of products and services to the fullest extent permitted by then applicable law." ¶7.09. Those CBDF rights include: "… recommending retail prices; advertising specific retail prices for some or all products or services sold by your franchised Business, which prices you will be compelled to observe; <u>engaging in marketing, promotional and related campaigns which you must participate in and which may directly or indirectly impact your retail prices (such as 'buy one, get one free')</u>; and, otherwise mandating, directly or indirectly, the maximum and/or minimum retail prices which your franchised Business may charge the public for the products and services it offers." *Id.* (emphasis added).

71.     CBDF's Asset Purchase Agreement requires franchisees acknowledge that CBDF is selling access to its trade secrets and proprietary information which CBDF asserts includes information "related to customers, the identities of existing, past or prospective customers, <u>prices charged or proposed to be charged to customers</u>…" and other information. ¶7.5(b) (emphasis added).

72.     The Federal Trade Commission responded on February 15, 2023 to a Freedom of Information Act Request from Casablanca's counsel. The response included information on twenty-five complaints filed against Closets by Design. One such complaint was filed with the FTC Call Center on September 7, 2021. The FTC notes on that call state: "Consumer was in training to sell closets for Closets by Design she is informed that she is to tell her customers that they will be getting

40% off the cabinetry, When she confronted him, he explained that the 40% is added into the price given to the consumer so that it can be knocked off. Consumer upset that this is deceptive. Says this is a franchise all over Chicago area. This disturbed her so much, she did not go further with the training." (errors in original). This is additional evidence that the corporate Defendants' false advertising is intentional, willful, and malicious.

73.     CBDF's Franchise Agreement declares that upon termination, the franchisee must immediately stop using CBDF's "price book information" and return that information to CBDF. ¶18.01(4), (8).

### (iii).   CBDF Controls Closets by Design® Print Advertising

74.     CBDF's Franchise Agreement requires franchisees "to conform all advertising to the standards, specifications and requirements specified in writing by us, in our Manual or otherwise." ¶10.01. To punctuate CBDF's control of the advertising it discloses in its FDD that it uses "in-house advertising personnel" and intends to engage advertising and public relations firms to assist in its advertising program.

75.     CBDF's Franchise Agreement requires franchisees to advertise locally. ¶10.06. Franchisees may only use advertising CBDF furnishes or approves in writing in advance. ¶¶10.01, 10.02.

76.     CBDF's Franchise Agreement requires franchisees to pay into a National Promotion and Protection Fund. ¶10.04. Franchisees are required to send those payments directly to CBDF, which takes 15% annually as an administration fee. CBDF's 2020, 2022, and 2023 FDD's declares: "CBDF uses the National Promotion and Protection Fund for preparation, production and distribution of Closets By Design advertising (including print media pieces, brochures and collateral materials), press releases and other point of sale materials." CBDF's Franchise Agreement declares that CBDF "will direct all advertising programs with sole control over the creative concepts, materials and media used in the

1    programs, and the placement and allocation of advertising." ¶10.04.

2        77.    CBDF advertises heavily via direct mail marketing based on the

3    bankruptcy petition it filed on March 18, 2010 in the Bankruptcy Court for the

4    Central District of California (Case 2:10-bk-19973-RN). The Schedule F to that

5    petition reveals CBDF was in debt to at least six direct mail marketing companies:

6    Val-Pak Direct Marketing Systems ($273,100), Valassis Direct Mail Inc.

7    ($134,141), Money Mailer ($57,273), National Ad Fund ($62,826), Action

8    Marketing ($17,100), and Homeowners Marketing Services ($552).

9        **(iv).    CBDF Controls Closets by Design® Internet Advertising**

10        78.    CBDF's Franchise Agreement declares: "CBDF alone may establish,

11    maintain, modify or discontinue all internet, worldwide web and electronic

12    commerce activities pertaining to the System, including through the use of a page

13    or profile on a social media website such as Facebook, Instagram, Linkedin or

14    Twitter. Franchisees and their employees are not allowed to establish their own

15    profiles on any social media page reflecting the Closets by Design brand, nor are

16    they allowed to establish any Closets by Design related web page." ¶3.04D.

17        79.    CBDF's Franchise Agreement declares: "We may provide you with a

18    'click through' subpage on any general Closets By Design web site we maintain. If

19    we establish one or more websites or other modes of electronic commerce and if

20    we provide a 'click through' subpage at each such website for the promotion of

21    your Closets By Design Business, you agree to routinely provide us with updated

22    copy, photographs and news stories about your franchised Business suitable for

23    posting on your franchised Business's 'click through' subpage, the content,

24    frequency and procedure of which will be specified in our Manual." ¶3.04D.

25        80.    Notwithstanding CBDF's assertion in its FDD's that it may provide its

26    franchisees with a "click through subpage" on a website that it maintains, that

27    service is provided <u>by Closets by Design</u> via its closetsbydesign.com website.

28    **Exhibits 5, 6.**

---

First Amended Complaint                17

81.     All the Closets by Design® online advertising that Closet by Design publishes on its website and through its social media accounts are not only for its benefit but also for the benefit of the Company Owned Outlets and CBDF and its franchisees. By virtue of creating the false advertising complained of herein, and paying for its distribution and publication, CBDF is directly liable for that false advertising. CBDF's management and control of, and participation in, that advertising is also contributory false advertising. *In re Outlaw Lab., LLP.,* 463 F.Supp.3d 1068, 1082-83 (S.D. Cal. 2020).

**(v).**    **CBDF's Advertising Expenditures**

82.     CBDF's 2020, 2022, and 2023 FDD's disclose that its Promotion and Protection Fund had $4,325,085 in it in 2019, in 2021 it had $4,260,464, and in 2022 it had $4,374,001.

83.     The Notes to the Financial Statements in CBDF's 2020, 2022, and 2023 FDD's disclose that its advertising expenses for 2018 was $16,998,5502, for 2019 they were $21,536,594, for 2020 they were $23,025,552, for 2021 there were $35,069,308, and for 2022 they were $43,831,414.

84.     CBDF has expended substantial sums to distribute and publish the false advertising. This Court should presume, therefore, that consumers were, in fact, deceived and that CBDF bears the burden to prove otherwise. *U-Haul Int'l, Inc. v. Jartran, Inc.,* 793 F.2d 1034, 1041 (9th Cir. 1986).

**D.**    **Other Joint Conduct**

85.     Closets by Design, CBDF, Closet World, and Home Organizers all filed for bankruptcy protection in March 2010 according to CBDF's 2023 FDD.

86.     Closets by Design, CBDF, and Home Organizers put up as collateral all their assets to guarantee a CIT Bank, N.A. loan in December 2021. The bank secured the loan via a UCC filing with the California Secretary of State. CBDF discusses the loan and the guarantees in its 2023 FDD which notes that Home Organizers refinanced a credit agreement that provides for a $30,000,000 loan and

1     a $10,000,000 line of credit.

2         87.    The California Department of Tax and Fee Administration responded

3     on May 19, 2023 to a Public Records Act Request from Casablanca's counsel. The

4     response included "a copy of the public non-confidential permit information

5     located for Closet World, Inc." and reveals that from June 1, 2017 to the present

6     Closet World and CBDF have a financial arrangement that involves the reporting

7     of "sales and/or use" taxes.

8                          **VII.  The False Advertising**

9     **A.    Previous Challenges to the False Advertising**

10        88.    Closets by Design and CBDF have had their advertising practices

11    challenged on numerous occasions, including twice in this Court. They have been

12    undaunted by such challenges and have publicly proclaimed that the challenges to

13    their advertising practices were "bogus."

14        89.    Based on consumer complaints and the allegations made in various

15    lawsuits, the Defendants have long known that consumers and some industry

16    participants believe the corporate Defendants' Former Price Comparison and

17    Continuous Sale advertisements are false and misleading. Notwithstanding this

18    knowledge, the Defendants have not changed their deceptive advertising.

19        90.    *Newbold v. Closets by Design and CBDF*, Case 8:19-cv-00077, was a

20    consumer class action suit filed on January 14, 2019 that asserted unfair

21    competition and related claims, including false advertising, based on Closets by

22    Design's "brand-wide, pervasive and continuous campaign of falsely claiming that

23    their merchandise and services sold at a far higher price in order to induce Plaintiff

24    and all Class members to purchase merchandise at purportedly marked-down sale

25    prices." The case was dismissed without prejudice on February 5, 2019 before a

26    responsive filing.

27        91.    *Grevle v. Closets by Design and CBDF*, Case 2:19-cv-3881, was a

28    consumer class action suit filed on May 3, 2019 that also asserted false advertising,

First Amended Complaint                  19

the factual basis for which was that Closets by Design and CBDF "have continuously offered consumers across the United States '40% off' the purchase of Closets By Design closets, garage cabinets, and other home organizer systems. … Defendants' list prices are contrived. They are not reflective of prices at which Closets By Design products and services have for a meaningful period of time been actively and in good faith offered for sale. Since Defendants' list prices are fictitious, Defendants' offer of '40% off' is also fictitious." Closets by Design's motion to dismiss this false advertising claim was denied on August 22, 2019 and it appears the case was dismissed by stipulation that same day.

92.   *CBD Franchising, Inc., et al. v. Jeff Klein*, Case 19STCV12051, was a defamation action, with related claims, filed in the Los Angeles County Superior Court on April 4, 2019 and involved claims relating to the 40% Off discount sale.

93.   A specific claim made in the *Klein* action was that the Closets by Design and CBDF's 40% Off discount was fictitious.

94.   In addition, Closet World has also been sued in this Court based on the same deceptive price false advertising complained of here. *Sarkhan Nabiyev v. Closet World, Inc. and Home Organizers, Inc.,* Case No. 2:23-cv-02218-DSF, was filed on March 24, 2023 and is a consumer class false advertising case currently pending.

**B.    The Advertisements**

95.   During at least the past two years, the corporate Defendants have each distributed and published throughout Southern California many tens of thousands of advertisements that offer their respective products at a discount *of always at least 40% Off.*

96.   These Former Price Comparison advertisements have minor discount variations. Closets by Design's purported discount is sometimes advertised as "40% Off," "40% Off Plus 10%" or "40% Off Plus 15%" while Closet World's purported discount is most often simply advertised as "50% Off" – which,

First Amended Complaint                         20

mathematically, is nearly the same discount as Closets by Design's 40% Off Plus 10% and Plus 15% discounts. Closets by Design's discount drops to 30% for purchases between $700 and $1,000. This variation, like all the other discount variations, *is fictitious* because only an insignificant number of sales, if any, are for less than $1,000. For convenience, all these minor variations in the purported discount will be referred to herein as the baseline "40% Off" sale offer.

97.    The corporate Defendants' advertisements are distributed via wraps in newspapers and direct mail flyers, and published on the world wide web via Google sponsored advertising, and in advertisements posted on Facebook and Instagram and, on information and belief, on Twitter.

98.    The corporate Defendants' respective products, however, are *neither advertised nor sold at a higher, non-discount list price*.

99.    The corporate Defendants' Former Price Comparison advertisements do not disclose the factual basis for the 40% Off discount. Prospective customers are induced by the 40% Off discount to invite Closets by Design and Closet World sales designers into their homes for a design consultation and only learn the alleged bona fide list price of the products during that in-home sales effort.

100.    Every Closets by Design and Closet World prospective customer is offered at least the 40% Off discount off the then-disclosed list price. Based on Casablanca's similar sales data for its similar products, published industry data, and CBDF's FDD's, all or nearly all of Closets by Design and Closet World sales are for $1,000 or more, and sales under $700 are insignificant. CBDF's 2020, 2022, and 2023 FDD's discloses that *the average sale* for its franchisees in business over a year in 2019 was <u>$4,081</u>, in 2021 the average sale was <u>$5,045</u>, and in 2022 the average sale was <u>$5,647</u>.

101.    Since every customer is offered these perpetual 40% Off discounts, that purported discounted "sale" price *is the list price*. The 40% higher "list" price only disclosed during the in-home consultation is an inflated, phantom price at

which the corporate Defendants' respective products are not sold. The representations made to consumers by the corporate Defendants' respective sales designers during the in-home consultation that the products are regularly sold at a 40% higher price is literally false. Those misrepresentations may expose those sale designers to personal liability. See, e.g., Bus. & Prof. §17500.3(b).

102. When a product is always sold at a "discounted" price then its list price is that "discounted" price and the assertion to customers they are buying at a "discount" is a lie. The corporate Defendants have lied, and continue to lie, every time they distribute or publish their 40% Off sale offer and every time one of their sales designers quote the inflated, phantom list price.

103. Embedded in each of the corporate Defendant's advertisements is a second lie: that their discount price "sale" will end on a date certain. To reasonable consumers, these representations mean that after the specified date, the products will no longer be on sale and will retail at their purported regular list price. The corporate Defendants' respective "sale" does not end, however. Each simply continues its "sale" with a new expiration date. The advertisements for their Continuous Sale are false advertising because each sale expiration date is literally false.

104. Embedded in each of the corporate Defendant's advertisements is often a third lie: that their discount price "sale" is new, is back, or is being offered to celebrate a particular holiday or event, such as a "Winter" or "Summer" or "Presidents Day" or "Memorial Day" sale. These misrepresentations are false advertising because each corporate Defendants' respective "sale" has been offered continuously for years and is not triggered by any holiday or event.

105. By their false advertising, the corporate Defendants benefit by (1) acquiring the opportunity to make sales and (2) persuading customers to purchase their products under their mistaken belief that (i) the 40% Off price is a legitimate discount off its bona fide list price and (ii) the 40% Off price is available for only a

limited time. The corporate Defendants also benefit by diverting prospective customers away from Casablanca, which does not employ such deceptive advertising to pique the consumers' initial interest.

## C.   The Harm Caused by the False Advertisements

106.   The corporate Defendants' false advertising harms reasonable potential consumers, the actual consumers who purchase the corporate Defendants' respective products, and Casablanca.

107.   The corporate Defendants' purported 40% Off discount and the representations that the sale will end, or is new, or is back, or is being offered to celebrate a particular holiday or event, are literally false or false by implication— or are true but likely to mislead or confuse *reasonable consumers* into believing they are receiving a discount or the sale will soon end. Consumers are harmed not only by their actual confusion caused by the false advertising but by the likelihood they will be mislead or confused. 15 U.S.C. §1125(a)(1).

108.   The *corporate Defendants' customers* who actually purchase products after viewing the false advertising do not receive the benefit of the bargain because the products they purchase have lower value than they are led to believe. Through the 40% Off advertisements and the salespersons' statements, the corporate Defendants (1) persuade reasonable, bargain-seeking prospective customers to reduce their search for comparable, competing products, (2) lead them to falsely believe the corporate Defendants have sold, and have a good faith intention to continue to sell, their respective products at a higher, bona fide list price, (3) increase prospective and actual customers' perception of the transaction's value, and (4) increases the likelihood customers will return.

109.   Casablanca has been injured as a result of the corporate Defendants' false advertising. Casablanca's position in the marketplace has been weakened by the diversion of prospective customers to Closets by Design, the Company Owned Outlets, and Closet World. Casablanca's chief executive officer is Glenn Johnson.

Johnson has personally spoken within the last two years to numerous potential Casablanca customers who told Johnson they decided to do business with Closets by Design or Closet World instead of Casablanca specifically because they viewed and believed the corporate Defendants' 40% Off false advertising. In addition, Casablanca staff Brian Loecher and Stephanie Gordon have likewise each spoken with countless potential Casablanca customers within the last two years who told each of them they would not accept appointments or proposals from Casablanca unless Casablanca would discount its prices by the same 40% Off advertised by Defendants.

110. Casablanca's goodwill has been damaged because consumers have been led to falsely believe that Closets by Design and Closet World provide deeper discounts off their bona fide list prices than does Casablanca, implying that Closets by Design and Closet World provide a better value and are more cost efficient, customer-appreciative companies.

111. Casablanca has had to spend money and resources it otherwise would not have to spend in order to countervail the effects of Defendants' false advertising. Johnson conservatively estimates he has spent hundreds of hours during the past three years responding to (and attempting to mitigate) Defendants' false advertising. For example, during the past two years alone, Johnson has travelled to sales appointments, frequently spending up to two hours en route to the appointment location, only to be turned away by the customer because they believed they would receive "percentage off" pricing that Casablanca could not honestly match. Even when Johnson has suggested to prospects that the Defendants' pricing discount is illusory, he has been turned away dozens of times. Johnson conservatively estimates this has happened to him personally over 50 times in the past three years, and hundreds of times when considering the similar experiences of Casablanca's other sales staff.

112. Johnson has spent significant time away from his other duties to

compile, assess, and countervail Defendants' false advertising. Johnson estimates that Casablanca has lost at least $2 million in man hours spent answering futile sales calls and training its sales force how to respond to the false advertising. Johnson further asserts that the length of time to make many sales is unnecessarily increased by having to explain to potential customers that Casablanca's products are sold at a reasonable market list price and that the corporate Defendants' purported discount is, in fact, fictitious.

## VIII.  The Investigation

113.    Casablanca's principal, its attorneys, and two researchers investigated the past and present corporate Defendants' respective advertising material.

**A.    Closets by Design**

114.    The terms and conditions of Closets by Design's 40% Off sale currently state in their entirety: "40%+15% off any order of $1000 or more, or 40% off any order of $700-$999 on any complete custom closet, garage, or home office unit. Free installation on any order of $850 or more. 12 Month Special Financing with minimum financing order required. Not valid with any other offer. With incoming order, at time of purchase only. May not be valid at all locations. Offer expires on 06/18/2023." These terms do not require the customer to purchase more than one product. The FTC Guide Against Deceptive Pricing at 16 C.F.R. §233.4 does not, therefore, apply.

**(i).    _Grevle v. Closets by Design_**

115.    The First Amended Complaint in the _Grevle_ action was filed June 26, 2019 and included as an exhibit the Grevle - Closets by Design sales contract and delivery receipt. The contract expressly applies Closets by Design's 40% Off sale offer. The delivery receipt is dated November 16, 2017. The contract and delivery receipt is attached here as **Exhibit 7**. Also attached to the complaint was a Closets by Design 40% Off coupon. The coupon notes that the offer "Expires in 30 days." That coupon is attached here as **Exhibit 8**.

116.   The Grevle - Closets by Design sales contract establishes that Closets by Design offered a 40% Off sale price in November 2017. The coupon expiration date establishes that at that time Closets by Design was conveying to consumers that the 40% Off sale price was for only a limited time. This same advertising practice continues today.

**(ii).   Rivas**

117.   Anita Rivas is an attorney hired by Casablanca to pose as a customer interested in purchasing Closets by Design products. Rivas made a consulting appointment for March 7, 2023. A Closets by Design salesperson named Liam McCullough spent about three hours in Rivas' apartment discussing her dining area storage options. Consistent with Closets by Design's advertisements detailed herein, McCullough told Rivas that Closets by Design's 40%+10% Off sale occurred only twice per year. He told Rivas that the sale was currently ongoing but would end the next day on <u>March 8, 2023</u>. Rivas purchased shelving from Closets by Design at the end of the consultation. Their contract expressly applies Closets by Design's 40% Off sale offer. The contract is attached here as **Exhibit 9**.

118.   The statements by Closets by Design salesperson McCullough that the 40%+10% Off sale occurred only twice per year and that it was currently ongoing but would end the next day were both literally false—they were lies—and establishes that Closets by Design's deceptive price false "sale" advertising is ongoing.

**(iii).   Johnson**

119.   In February 2023 Johnson received by mail at his home in Los Angeles County, California an envelope from Valpak Direct Marketing Systems containing coupon advertising. The exterior of the envelope was a Closets by Design 40% Off advertisement. Inside the envelope was a Closets by Design 40% Off coupon advertisement that noted the sale would end on March 12, 2023. Photographs of those advertisements are attached here as **Exhibit 10**. Those

advertisements are in all material respects the same coupon filed in the *Grevle* action which implies continuous use of this 40% Off direct mail marketing since at least June 2019. Over the preceding three years Johnson has received Closets by Design's 40% Off coupon advertisements by mail from Valassis and Valpak hundreds of times. Over that time, Johnson has also seen Closets by Design's 40% Off advertisements daily, either online or in print.

120. These facts are evidence that Closets by Design's 40% Off sale is continuous and that a significant number of consumers in Southern California have seen its 40% Off sale advertisements.

**(iv). Dennis**

121. Dr. Yancy Dennis is a data scientist with a doctorate in Chemical Engineering from the University of Virginia. Dennis' resume is attached here as **Exhibit 11.** Dennis was hired by Casablanca to find, collect, and compile information available on the world wide web about Closets by Design's advertising. Dennis performed his research from March 2, 2023 to March 6, 2023.

a. The Internet Archive Data

122. Dennis began by visiting the archive.org website maintained by The Internet Archive. As it explains: "The Internet Archive has created a service known as the Wayback Machine. The Wayback Machine makes it possible to browse more than 450 billion pages stored in the Internet Archive's web archive. Visitors to the Wayback Machine can search archives by URL (i.e., a website address). If archived records for a URL are available, the visitor will be presented with a display of available dates. The visitor may select one of those dates and begin browsing an archived version of the Web. The archived data made viewable and browsable by the Wayback Machine is obtained by use of web archiving software that automatically stores copies of files available via the Internet, each file preserved as it existed at a particular point in time." See, https://archive.org/legal/affidavit.php.

123.   Courts regularly take judicial notice of the webpages archived by The Internet Archive because they can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b)(1); *Ul LLC v. Space Chariot Inc.* (C.D. Cal. 2017) 250 F.Supp.3d 596, 604 fn. 2 (collecting cases).

124.   Dennis visited The Internet Archive's Wayback Machine and ran an archive request for Closets by Design's website, closetsbydesign.com. The results showed that The Internet Archive saved that website 1,246 times between May 11, 2000 and March 13, 2023. Dennis was instructed by Casablanca's counsel to focus on the website versions archived from November 2018 to the present. Attached as **Exhibit 12** are screenshots from The Internet Archive showing the dates of all the website captures for the years 2018 through 2023 (The Internet Archive identifies the capture dates within blue circles).

125.   There are 52 months between November 2018 to March 2023. During that time The Internet Archive saved closetsbydesign.com 158 times. Dennis viewed the homepage for each of these archived versions of that website and created a table, attached here as **Exhibit 13**, that lists the dates when the site was archived, whether the 40% Off sale banner was displayed on the homepage, the expiration date for each sale offer, and whether any additional discount was being advertised.

126.   The data collected and compiled on **Exhibit 13** establishes that:

- Closets by Design advertised its 40% Off sale from at least November 25, 2018 to December 11, 2018 (15 days). Then it stopped.

- Closets by Design began advertising its 40% Off sale again on or before May 21, 2019 and offered that "sale" price continuously until at least January 18, 2020 (8 months).

- For the next month, February 2020, Closets by Design advertised that its products would be sold at a $300 discount.

- Closets by Design began advertising its 40% Off sale again on or before March 10, 2020. Closets by Design advertised that offer continuously to at least March 2, 2023 (three years) (except for two days in May 2020).

On the date the First Amended Complaint complaint was filed, Closets by Design continued to advertise its 40% Off sale on its website homepage.

127.   Closets by Design's website is viewable in Southern California. Because it is, a significant number of consumers in that area have seen Closets by Design's deceptive 40% Off sale advertisement.

128.   Dennis downloaded a screenshot of the top portion of all 158 archived homepages (except November 12, 2018). He viewed each and compiled them into one file. Attached as **Exhibit 14** is a subset compilation consisting of one screenshot for each month of the 52 months the website was archived (during four of those 52 months The Internet Archive did not archive the website, so the compilation contains 48 screenshots). These screenshots confirm the data shown on **Exhibit 13**.

129.   Each archived closetsbydesign.com homepage as viewed on archive.org contains active links to internal pages within that archived website. The Internet Archive explains this process: "Links on archived files in the Wayback Machine point to other archived files (whether HTML pages or other file types), if any are found for the URL indicated by a given link. For instance, the Wayback Machine is designed such that when a visitor clicks on a hyperlink on an archived page that points to another URL, the visitor will be served the archived file found for the hyperlink's URL with the closest available date to the initial file containing the hyperlink. … Thus, in the case of a page constituted by a primary HTML file and other separate files (e.g., files with images, audio, multimedia, design elements, or other embedded content) linked within that primary HTML file, the primary HTML file and the other files will each have their own respective extended URLs and may not have been archived on the same dates." *Id.*

130. The 158 closetsbydesign.com homepages that were archived between November 2018 and March 2023 displayed, with the exceptions noted, a 40% Off banner advertisement. That advertisement hyperlinked to an internal page containing the "Terms and Conditions" of the offer. Dennis retrieved the terms and conditions linked-to by each of the 40% Off banner advertisements and compiled the expiration dates that were shown there. Those dates are on **Exhibit 13**. As The Internet Archive explains, the linked-to terms and conditions pages may not have been archived on the same date as the referring homepage. Because of this variation, many of the expiration dates Dennis retrieved are from terms and conditions pages that do not correspond to the date the homepage was archived. Two examples of the Terms and Conditions from which the expiration date can be found are shown in **Exhibit 15.**

131. Though the expiration date data does not correspond to the date the homepage was archived, the data shows the expiration date was extended 13 times from August 5, 2019 to March 3, 2023 (in red on **Exhibit 13**). On information and belief, and implication, the expiration date was, in fact, illusory because it was continuously amended to extend the 40% Off sale indefinitely. Closets by Design's publication of each expiration date was literally false because the sale, in fact, never expired. Closets by Designs lied every time it published an expiration date.

132. Nathaniel E Frank-White is a Records Request Processor at the Internet Archive. In response to a request from Casablanca's counsel, Frank-White downloaded certain archived closetsbydesign.com webpages and provided authenticated copies to Casablanca's counsel. **Exhibit 16** (declaration). Counsel viewed each page and created the following list which identifies the date the webpage was archived and the Closets by Design "discount" being advertised.

**Date archived    Discount**

Sept18, 2021        40% Off

Oct 16, 2021        40% Off

| | | |
|---|---|---|
| 1 | Nov 1, 2021 | 40% Off |
| 2 | Dec 26, 2021 | 40% Off plus 15% Off |
| 3 | Jan 26, 2022 | 40% Off plus 15% Off |
| 4 | Feb 14, 2022 | 40% Off |
| 5 | Mar 28, 2022 | 40% Off |
| 6 | Apr 1, 2022 | 40% Off |
| 7 | May 22, 2022 | Not archived |
| 8 | Jun 26, 2022 | 40% Off plus 15% Off |
| 9 | Jul 18, 2022 | 40% Off plus 15% Off |
| 10 | Aug 13, 2022 | 40% Off plus 15% Off |
| 11 | Sep 18, 2021 | 40% Off |
| 12 | Oct 17, 2022 | 40% Off |
| 13 | Nov 3, 2022 | 40% Off |
| 14 | Dec 3, 2022 | 40% Off plus 15% Off |
| 15 | Feb 10, 2023 | 40% Off plus 15% Off |
| 16 | Mar 13, 2023 | 40% Off plus 10% Off |

17        b.  <u>The Social Media Information</u>

18        133.   Dennis visited Closets by Design's Facebook and Instagram accounts.

19   Attached as **Exhibit 17** are the screenshots he took of its Facebook "About" page

20   and its Instagram homepage. The homepages are located here:

21   https://www.facebook.com/closetsbydesign

22   https://www.instagram.com/closetsbydesign

23        134.   Many Closets by Design franchisees also own and operate Instagram

24   accounts. **Exhibit 18** is a screenshot of an Instagram search result for "closets by

25   design" that shows just nine of those franchisee accounts.

26        135.   Meta, Inc. owns and operates the Facebook and Instagram social

27   media platforms. Account owners may advertise via those platforms.

28        136.   Advertisers, including Closets by Design, instruct Meta to serve up

First Amended Complaint                      31

1    their advertising according to the day, time, and information Meta knows about its
2    users, such as location, personal characteristics, and past online conduct.

3        137.   Closets by Design has advertised, and continues to advertise, heavily
4    on Facebook and Instagram. Its advertisements are served up to other users who
5    reside throughout the United States, including in Southern California, and in every
6    geographic location where its franchisees do business.

7        138.   Meta maintains a publicly accessible "Ad Library" that provides data
8    about each of its advertiser's advertisements. Most of the data relates to that
9    advertiser's currently ongoing advertising campaign. Some of the data is images
10   of, and information about, previous advertisements. The Ad Library can be
11   accessed here:  https://www.facebook.com/ads/library  The Ad Library for a
12   particular account can also be accessed by visiting its homepage, using the drop-
13   down menu triggered by clicking the ellipsis, navigating to the "About this
14   account" option, and then clicking the "Active ads" option.

15       139.   Dennis visited the Ad Library and queried it for "closets by design."
16   Attached as **Exhibit 19** is a screenshot of the Meta "About" page for Closets by
17   Design and screenshots of the active advertisement campaigns Closets by Design
18   ran in February 2023 and is running in March 2023. The results show Closets by
19   Design has over 73,000 followers and had approximately 280 advertisements
20   served to Facebook and Instagram users throughout the country in February 2023
21   and 270 advertisements in March 2023. Each advertisement was served up an
22   unknown number of times but, on information and belief, many tens of thousands
23   of times.

24       140.   This social media advertising establishes that Closets by Design
25   spends substantial funds to distribute its deceptive 40% Off sale offer and that a
26   substantial segment of consumers in Southern California have seen Closets by
27   Design's 40% Off sale advertisement.

28       141.   Dennis visited Closets by Design's Instagram account and took

---

screenshots of past advertisements that Closets by Design published on its page and, on information and belief, and implication, served to its followers and other Instagram users. The advertisements Dennis located date from December 14, 2018 to July 3, 2021. Dennis compiled the screenshots into a file which is attached here as **Exhibit 20.**

142.   The advertising compiled on **Exhibit 20** shows that:

- The 40% Off sale advertised on December 14, 2018 was a "holiday promo" that expired on January 24, 2019.

- The same 40% Off sale, advertised again on January 19, 2019, was the "Last chance to take advantage of this amazing offer."

- The 40% Off sale advertised on May 14, 2019 was a "Summer Special" that expired on June 30, 2019.

- The same 40% Off "Summer Special" sale, advertised again on June 10, 2019, was extended to July 31, 2019.

- The 40% Off sale advertised on November 30, 2019 was a "Holiday Special" that expired on December 31, 2019.

- The same 40% Off "Holiday Special" sale, advertised again on December 11, 2019, was extended to January 28, 2020 and was described as "Our best offer of the year is still going on."

- The 40% Off sale was advertised again on March 14, 2020.

- The 40% Off sale advertised on April 15, 2020 was "our best offer of the year."

- The 40% Off sale advertised on August 22, 2020 was "For a limited time."

- The 40% Off sale advertised on September 26, 2020 expired on September 30, 2020 and asserted it was "Your Last Chance" to get that deal.

- The 40% Off sale advertised on November 7, 2020 was "Big News" and expired on November 30, 2020.

- The 40% Off sale advertised on February 2, 2021 was the "Last Chance" to

get the deal because it was "over at the end of the month."

- The 40% Off sale advertised on March 1, 2021, the day after the previous sale supposedly ended, was a "new promotion."

- The 40% Off sale advertised on July 3, 2021 was "summer savings" that expired on July 31, 2021.

This data establishes that from December 14, 2018 to July 3, 2021 the 40% Off sale was continually extended and that prospective customers were led to believe that each "sale" offer would end. Every expiration date was literally false. Every assertion that the sale was different in kind than any preceding sale was literally false or misleading.

### (v).   **Ballard**

143.   Daniel Ballard is an attorney for Casablanca. Ballard conducted his own investigation to confirm that Closets by Design is still continuously extending its 40% Off sale without break. As detailed below, Ballard was able to confirm that practice by viewing advertisements publicly available, and readily available to anyone with a Facebook or Instagram account, and which are all in Defendants' possession or control.

144.   Ballard viewed his Facebook on February 21, 2023. Appearing in those posts was a Closets by Design "President's Day Special" advertisement for 40% Off. Ballard clicked the advertisement which resolved to the Closets by Design "Schedule Requests" webpage. That page displayed the "Terms and Conditions" for the sale offer. The terms noted the sale would end on <u>February 28, 2023</u>. Ballard took screenshots of the advertisement and Terms and Conditions. Both are attached here as **Exhibit 21**.

145.   Ballard viewed his Facebook and Instagram via his iPhone on March 6, 2023. Appearing in the posts were Closets by Design advertisements that proclaimed, "Last Chance To Get Our Best Offer" and included the 40% Off sale offer. Ballard clicked each advertisement which resolved to the Closets by Design

"Schedule Requests" webpage. That page displayed the "Terms and Conditions" for the sale offer. The terms noted the sale would end on <u>March 11, 2023</u>. Ballard took screenshots of each advertisement and Terms and Conditions. All are attached here as **Exhibit 22**.

146.   Ballard viewed his Facebook and Instagram via his iPhone on March 13, 2023. Appearing in the posts were Closets by Design advertisements that included the 40% Off sale offer. Ballard clicked the advertisements which resolved to the Closets by Design "Schedule Requests" webpage. That page displayed the "Terms and Conditions" for the sale offer. The terms noted the sale would end on <u>March 31, 2023</u>. Ballard took screenshots of each advertisement and Terms and Conditions. All are attached here as **Exhibit 23**.

147.   These facts establish that Closets by Design's 40% Off "President's Day Special" that was supposed to end on February 28, 2023 did not end because it was advertised again on March 6, 2023, which, Closets by Design claimed, was the "Last Chance" to get that deal because it ended on March 11, 2023. That deal did not end, however, because on March 13, 2023 Closets by Design advertised another 40% Off sale which purportedly ends on March 31, 2023.

148.   Ballard viewed his Instagram via his iPhone on April 4, 2023. Appearing was a Closets by Design advertisement that included the 40% Off sale offer and which linked to the terms and conditions on Closets by Design's website which noted that the sale would end on <u>April 30, 2023</u>.

149.   Ballard viewed his Facebook via his iPhone on May 1, 2023. Appearing was a Closets by Design advertisement that included the 40% Off sale offer and which linked to the terms and conditions on Closets by Design's website which noted that the sale would end on <u>May 31, 2023</u>.

150.   Ballard viewed his Facebook via his iPhone on June 5, 2023. Appearing was a Closets by Design advertisement that included the 40% Off sale offer and which linked to the terms and conditions on Closets by Design's website

which noted that the sale would end on <u>June 18, 2023</u>. On information and belief, and implication, that sale will be extended yet again.

**B.**   <u>**Closet World**</u>

151.   The terms and conditions of Closet World's 40% Off sale currently state in their entirety: "50% off any order of $1180 or more, 40% off any order of $880 or more on any Closet, Garage or Office orders and other products.  Not valid with any other offer. Offers and prices are subject to change without notice. Free installation and delivery with your order of $850 or more. Offers valid with incoming order at time of purchase, with complete unit purchase. Expires 06/18/2023. Special financing for 12 mo. with minimum payments On approved credit. Call or ask your Designer for details." These terms do not require the customer to purchase more than one product. The FTC Guide Against Deceptive Pricing at 16 C.F.R. §233.4 does not, therefore, apply.

152.   Closet World owns and operates a website at closetworld.com which is viewable in Southern California. The website homepage prominently displays its 40% Off discount offer. A significant number of consumers in Southern California have seen Closets by Design's deceptive 40% Off sale advertisement on that webpage.

153.   In response to a request from Casablanca's counsel, Nathaniel E Frank-White of the Internet Archive downloaded certain archived closetworld.com webpages and provided authenticated copies to Casablanca's counsel. **Exhibit 24** (declaration). Counsel viewed each page and created the following list which identifies the date the webpage was archived, the Closets by Design "discount" being advertised, and the expiration date of that "discount" sale offer.

| Date archived | Expiration | Discount |
| --- | --- | --- |
| Mar 27, 2020 | Apr 31, 2020 | 40% Off $700 or more, 50% Off $1,000 or more |
| Apr 17, 2020 | Apr 31, 2020 | 40% Off $700 or more, 50% Off $1,000 or more |
| May 24, 2020 | May 31, 2020 | 40% Off $700 or more, 50% Off $1,000 or more |

| | | | |
|---|---|---|---|
| 1 | Jun 16, 2020 | Jun 30, 2020 | 40% Off $700 or more, 50% Off $1,000 or more |
| 2 | Jul 13, 2020 | Aug 31, 2020 | 40% Off $700 or more, 50% Off $1,000 or more |
| 3 | Aug 11, 2020 | Aug 31, 2020 | 40% Off $700 or more, 50% Off $1,000 or more |
| 4 | Sept 7, 2020 | Sept 13, 2020 | 40% Off $700 or more, 50% Off $1,000 or more |
| 5 | Oct 17, 2020 | Oct 31, 2020 | 40% Off $700 or more, 50% Off $1,000 or more |
| 6 | Nov 22, 2020 | Dec 31, 2020 | 40% Off $700 or more, 50% Off $1,000 or more |
| 7 | Dec 9, 2020 | Dec 31, 2020 | 40% Off $700 or more, 50% Off $1,000 or more |
| 8 | Jan 24, 2021 | Feb 28, 2021 | 40% Off $700 or more, 50% Off $1,000 or more |
| 9 | Feb 24, 2021 | Feb 28, 2021 | 40% Off $700 or more, 50% Off $1,000 or more |
| 10 | Mar 8, 2021 | Mar 31, 2021 | 40% Off $700 or more, 50% Off $1,000 or more |
| 11 | Apr 21, 2021 | Apr 30, 2021 | 40% Off $600 or more |
| 12 | May 15, 2021 | Jun 30, 2021 | 50% Off $600 or more |
| 13 | Jun 10, 2021 | July 22, 2021 | 50% Off $600 or more |
| 14 | Jul 15, 2021 | July 31, 2021 | 50% Off $600 or more |
| 15 | Aug 4, 2021 | Aug 31, 2021 | 50% Off $600 or more |
| 16 | Sep 15, 2021 | Sept 30, 2021 | 40% Off $600 or more |
| 17 | Oct 18, 2021 | Nov 7, 2021 | 40% Off $600 or more |
| 18 | Nov 27, 2021 | Not archived | Not archived |
| 19 | Dec 17, 2021 | Dec 15, 2021 | 50% Off $600 or more |
| 20 | Jan 15, 2022 | Jan 15, 2021 | 50% Off $600 or more |
| 21 | Feb 16, 2022 | Feb 26, 2022 | 50% Off $600 or more |
| 22 | Mar 15, 2022 | 30 days | 40% Off $600 or more |
| 23 | Apr 11, 2022 | May 7, 2022 | 40% Off $600 or more |
| 24 | May 17, 2022 | June 18, 2022 | 50% Off $600 or more |
| 25 | Jun 9, 2022 | 30 days | 50% Off $600 or more |
| 26 | July 13, 2022 | 30 days | 50% Off $600 or more |
| 27 | Aug 24, 2022 | Not archived | Not archived |
| 28 | Sept 27, 2022 | 30 days | 40% Off $880 or more |

First Amended Complaint                          37

| | | |
|---|---|---|
| Oct 26, 2022 | 30 days | 40% Off $880 or more |
| Nov 16, 2022 | Dec 10, 2022 | 40% Off $880 or more, 50% Off $1,180 or more |
| Dec 17, 2022 | Dec 31, 2022 | 40% Off $880 or more, 50% Off $1,180 or more |
| Jan 19, 2023 | Jan 31, 2023 | 40% Off $880 or more, 50% Off $1,180 or more |
| Feb 16, 2023 | Feb 28, 2023 | 40% Off $880 or more, 50% Off $1,180 or more |

154.   Dennis visited The Internet Archive's Wayback Machine and ran an archive request for Closet World's website, closetworld.com. He downloaded one version of the website's homepage for every month between April 2018 through March 2023. Dennis viewed each homepage and created a table, attached here as **Exhibit 25**, that lists the dates when the site was archived and the Closet World "discount" being advertised.

155.   Ballard viewed his Facebook and Instagram via his iPhone on various dates between February 8, 2023 and June 6, 2023. Appearing in the posts were Closet World advertisements that included the 40% Off sale offer. Ballard clicked each advertisement which resolved to the Closet World "Schedule Requests" webpage. That page displayed the terms and conditions for the sale offer. Ballard took screenshots of each advertisement and most of the terms and conditions. The following is the information he collected:

| Date Viewed | Expiration | Discount |
|---|---|---|
| Feb 8, 2023 | Not noted | 50% Off |
| Feb 13, 2023 | Not noted | 50% Off "Presidents Day" sale |
| Mar 21, 2023 | Mar 31, 2023 | 40% Off Plus 10% Off |
| Apr 3, 2023 | Apr 30, 2023 | 40% Off Plus 10% Off |
| May 8, 2023 | May 31, 2023 | 50% Off "Our Best Offer is Back" |
| May 19, 2023 | May 31, 2023 | 50% Off "Offer Ends Soon" |
| Jun 5, 2023 | Jun 18, 2023 | 50% Off |

156.   Closet World also advertises on Google's search engine platform. Google's Ads Transparency Center reveals that Closet World's advertisements on

1   that platform routinely display its 40% Off sale offer. **Exhibit 4.**

2   157. The information compiled by the Internet Archive, Dennis, and Ballard

3   establish that Closet World continually offers its 40% Off discount without

4   interruption.

### FIRST CAUSE OF ACTION
### False Advertising under 15 U.S.C. §1125(a)(1)B)
### (Against Closets by Design, CBDF, and Closet World)

158.   Casablanca realleges each and every allegation contained above as if
fully set forth herein.

159.   Closets by Design's 40% Off sale has been continuously advertised in
interstate commerce since at least May 21, 2019.

160.   Closets by Design and CBDF jointly owns six (6) Closets by Design®
Company Owned Outlets. Closets by Design manages those outlets. Closets by
Design distributes and publishes its 40% Off sale advertisements for the benefit of
those Company Owned Outlets.

161.   A significant number of consumers in Southern California have seen
Closets by Design's 40% Off sale advertisements. Consumers have contacted
Closets by Design in response to viewing those advertisements. After viewing the
advertisements it is probable that a substantial segment of consumers, acting
reasonably, could be deceived into believing that Closets by Design's products
were, and would again, be sold at a bona fide 40% higher list price.

162.   Closets by Design's 40% Off sale offer, each expiration date asserted
in each advertisement, and the claim it made in each advertisement that its sale will
end, or is a new sale, or is a seasonal or holiday sale, are all literally false or likely
to mislead or confuse consumers.

163.   Closets by Design's 40% Off sale advertisements likely influenced
consumers to purchase its products. Consumers have purchased products from
Closets by Design and the Company Owned Outlets due to the misimpression they

formed after viewing the 40% Off advertisements that their purchase price was 40% lower than Closets by Design's bona fide list price.

164.   Closets by Design and CBDF have made profits as a result of sales generated by consumers' viewing and relying upon the offer that they could purchase Closet by Design products at a 40% discount from its bona fide list price.

165.   Closet World's 40% Off sale has been continuously advertised in interstate commerce since at least March 27, 2020.

166.   A significant number of consumers in Southern California have seen Closet World's 40% Off sale advertisements. Consumers have contacted Closet World in response to viewing those advertisements. After viewing the advertisements it is probable that a substantial segment of consumers, acting reasonably, could be deceived into believing that Closet World's products were, and would again, be sold at a bona fide 40% higher list price.

167.   Closet World's 40% Off sale offer, each expiration date asserted in each advertisement, and the claim it made in each advertisement that its sale will end, or is a new sale, or is a seasonal or holiday sale, are all literally false or likely to mislead or confuse consumers.

168.   Closet World's 40% Off sale advertisements likely influenced consumers to purchase its products. Consumers have purchased products from Closet World due to the misimpression they formed after viewing the 40% Off advertisements that their purchase price was 40% lower than Closet World's bona fide list price.

169.   Closet World has made profits as a result of sales generated by consumers' viewing and relying upon the offer that they could purchase its product at a 40% discount from its bona fide list price.

170.   Casablanca has been injured as a result of Closets by Design, CBDF, and Closet World's distribution and publication of their deceptive 40% Off sale advertisements. Casablanca's position in the marketplace has been weakened by

the diversion of prospective customers to Closets by Design, the Company Owned Outlets, and Closet World. Casablanca's goodwill has been damaged because consumers are led to falsely believe Closets by Design and Closet World provide deeper discounts off their bona fide list prices than does Casablanca, implying that Closets by Design and Closet World provide a better value and are more cost efficient, customer-appreciative companies. Casablanca has spent resources it otherwise would not have spent in order to respond to the false advertising, including training its sales force how to respond.

171.   By reason of, and as a direct and proximate result of, Closets by Design, CBDF, and Closet World's false advertising, they have each caused, and are now causing, Casablanca harm, and, unless each is enjoined by the Court, each will continue to cause Casablanca immediate and irreparable harm for which there is no adequate remedy at law, and for which Casablanca is entitled to injunctive relief.

### SECOND CAUSE OF ACTION
### Contributory False Advertising under 15 U.S.C. §1125(a)(1)B)
### (Against CBDF and Melkonian)

172.   Casablanca realleges each and every allegation contained above as if fully set forth herein.

173.   Closets by Design and Closet World have engaged in false advertising.

174.   CBDF has contributed to Closets by Design's false advertising by knowingly inducing it, or causing it, or materially participating in it as alleged herein.

175.   Melkonian has contributed to Closets by Design and Closet World's false advertising by knowingly inducing it, or causing it, or materially participating in it as alleged herein.

176.   CBDF and Melkonian have each, therefore, contributed to the harm

Casablanca has suffered due to the complained-of false advertising.

177.  By reason of, and as a direct and proximate result of, CBDF and Melkonian's contributory false advertising, they have each caused, and are now causing, Casablanca harm, and, unless each is enjoined by the Court, each will continue to cause Casablanca immediate and irreparable harm for which there is no adequate remedy at law, and for which Casablanca is entitled to injunctive relief.

**THIRD CAUSE OF ACTION**
**RICO Violations (18 U.S.C. §1962(a), (b), (c)).**
**(Against Closets by Design, CBDF, and Closet World)**

178.  Casablanca realleges each and every allegation contained above as if fully set forth herein.

179.  Closets by Design, CBDF, and Closet World created an enterprise for the common purpose of decreasing their customer acquisition costs and increasing their sales by diverting business from their competitors through the distribution and publication of advertising via the mail and worldwide web that each Defendant knows is literally false. The purpose of the false advertising is to deceive consumers and to divert business from their competitors to themselves. Each of these corporate Defendants has distributed and published tens of thousands of such false advertisements. Their false advertising constitutes mail and wire fraud and is a pattern of racketeering activity. 18 U.S.C. §§1341, 1343; §1961(5).

180.  Closets by Design, CBDF, and Closet World have each received income derived from their pattern of racketeering activity and each has used or invested part of that income to operate their respective businesses, each of which affects interstate commerce, and to fund their continuing enterprise. Such conduct, along with their other conduct as alleged herein, violates 18 U.S.C. §1962(a).

181.  Through their pattern of racketeering activity, Closets by Design, CBDF, and Closet World have maintained an interest in and control of their respective businesses, each of which affects interstate commerce, and of their

continuing enterprise. Such conduct, along with their other conduct as alleged herein, violates 18 U.S.C. §1962(b).

182.   Closets by Design, CBDF, and Closet World are each associated with the enterprise they created. Their enterprise engages in and affects interstate commerce. Through a pattern of racketeering activity, each of these corporate Defendants conducts or participates in the affairs of that enterprise. Such conduct, along with their other conduct as alleged herein, violates 18 U.S.C. §1962(c).

**PRAYER FOR RELIEF**

WHEREFORE, Casablanca prays for relief and judgment as follows:

1.   Finding that Closets by Design, CBDF, and Closet World have each engaged in false advertising in violation of the Lanham Act (15 U.S.C. §1125(a)(1)(B));

2.   Finding that Closets by Design, CBDF, and Closet World's false advertising is intentional, willful, and malicious;

3.   Finding that Casablanca has been irreparably harmed by Closets by Design, CBDF, and Closet World's false advertising and issuing an injunction prohibiting each of those companies from continuing to distribute and publish their false advertising;

4.   Awarding Casablanca monetary relief under 15 U.S.C. §1117(a) for Closets by Design, CBDF, and Closet World's false advertising, specifically: (i) the profits each company earned as a result of the false advertising, (ii) the amount in damages Casablanca sustained as a result of the false advertising, and (iii) Casablanca's costs of the action;

5.   Finding that CBDF and Melkonian have each engaged in contributory false advertising in violation of the Lanham Act by (15 U.S.C. §1125(a)(1)(B);

6.   Finding that CBDF and Melkonian's contributory false advertising was intentional, willful, and malicious;

7.   Finding that Casablanca has been irreparably harmed by CBDF and

1   Melkonian's contributory false advertising and issuing an injunction prohibiting

2   each of them from continuing to contribute to the distribution and publication of

3   Closets by Design, CBDF, and Closet World's false advertising;

4          8.   Awarding Casablanca monetary relief under 15 U.S.C. §1117(a) for

5   CBDF and Melkonian's contributory false advertising specifically: (i) the profits

6   each earned as a result of the false advertising, (ii) the amount in damages

7   Casablanca sustained as a result of the false advertising, and (iii) Casablanca's

8   costs of the action;

9          9.   Awarding Casablanca pre-judgment and post-judgment interest, to

10   the fullest extent allowable at law or in equity, on all damages;

11         10. Finding this case exceptional under the Lanham Act and awarding

12   Casablanca its reasonable attorneys' fees under 15 U.S.C. §1117(a);

13         11. Entering an order requiring each Defendant to publish corrective

14   advertising;

15         12. Entering an order prohibiting each Defendant from using the names

16   "Casablanca," "One Day," "One Day Doors," and "One Day Doors and Closets,"

17   or any confusingly similar variation of any of those names, as a keyword or other

18   device to generate any online advertisements;

19         13. Finding that Casablanca is an intended beneficiary of the False

20   Advertising Injunction issued in the *People v. Closet World* action;

21         14. Finding that Closets by Design, CBDF, and Closet World have each

22   violated the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C.

23   §1962(a), (b), (c));

24         15. Awarding Casablanca monetary relief under 18 U.S.C. §1964(c),

25   specifically: (i) threefold Casablanca's damages, (ii) a reasonable attorneys' fee,

26   and (iii) Casablanca's costs of the action;

27   ///

28   ///

First Amended Complaint      44

16. Granting such other and further relief as this Court deems just and proper.

Respectfully submitted,

Date: June 9, 2023                    **PETERSON WATTS LAW GROUP, LLP**

By: ____/s/ Glenn W. Peterson_____

*Attorneys for Casablanca Design Center, Inc.*