O

# United States District Court
# Central District of California

| | |
|---|---|
| CASABLANCA DESIGN CENTER, INC., <br><br> Plaintiff, <br><br> v. <br><br> CLOSETS BY DESIGN, INC. et al., <br><br> Defendants. | Case № 2:23-cv-02155-ODW (PDx) <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS [27][28]** |

## I.     INTRODUCTION

Plaintiff Casablanca Design Center, Inc. brings this action against Defendants Closets by Design, Inc., CBD Franchising, Inc., Closet World, Inc., and Frank Melkonian for allegedly violating federal false advertising laws and the RICO Act by misleading consumers with deceptive advertisements featuring falsely discounted home organization products. (First Am. Compl. ("FAC"), ECF No. 19.)  Defendants now move to dismiss Casablanca's FAC for failure to state a claim under Federal Rule of Civil Procedure ("Rule") 12(b)(6).  (Closet Mot. Dismiss FAC ("Closet Mot."), ECF No. 27; Melkonian Mot. Dismiss FAC ("Melkonian Mot."), ECF No. 28.)  For the following reasons, the Court **GRANTS IN PART AND DENIES IN PART**

Defendants' Motions.[1]

## II. BACKGROUND

The following facts are taken from Casablanca's FAC. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that well-pleaded factual allegations are accepted as true for purposes of a motion to dismiss).

### A. Defendants' Business Model and Operations

Closets by Design, CBD Franchising ("CBDF"), and Closet World, Inc. (collectively, the "Closet Defendants") own and operate a nationwide home organization business where they make, sell, and market home organizing products including, but not limited to, custom closets, garages, storage solutions, and home offices. (FAC ¶¶ 32–58.) Frank Melkonian is the "CEO of all three corporate Defendants and their parent company, Home Organizers." (*Id.* ¶¶ 22.) To market their Products, Defendants engage in various advertising techniques such as online advertisements and mailing physical paper advertisements directly to consumers. (*Id.* ¶¶ 95–105.) The advertisements promote Defendants' product line and simultaneously offer apparent "limited-time" discount sales to consumers who elect to contract with and purchase Defendants' Products. (*Id.*) These online and paper advertisements typically offer "40%" or "50%" discounts on the quoted price, as well as other incentives such as free installation and financing plans. (*Id.* ¶ 96.)

### B. Casablanca's Relationship with Defendants

Casablanca is a California corporation that does business as an "Interior Door & Closet Company." (*Id.* ¶ 12.) Casablanca is a direct competitor to the Closet Defendants and serves a similar market in the Southern California area. (*Id.* ¶¶ 109–112.) Over the last three years, Casablanca has lost out on potential customers who have instead opted for Closet Defendants' products. (*Id.*) Potential customers repeatedly informed Casablanca's CEO that they believed and were influenced by

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

"the [Closet] Defendants' 40% Off false advertising." (*Id.* ¶ 109.) Additionally, potential customers "would not accept appointments or proposals from Casablanca unless Casablanca would discount its prices by the same 40% Off advertised by [Closet Defendants]." (*Id.*)

### C. Plaintiff's Allegations

On June 9, 2023, Casablanca filed its FAC. (*See generally id.*) Casablanca alleges Closet Defendants advertised limited-time sales and discounts are, in reality, fake promotions offered continuously throughout the year. (*Id.* ¶¶ 6–10, 95–105, 114–157.) Additionally, Casablanca contends the regular list prices of Defendants' products are fabricated, because the purported list prices are always discounted. (*Id.* ¶¶ 95, 114–157.) Furthermore, Casablanca asserts the fake discounts are designed to mislead and induce consumers to purchase products promptly under the belief that they are receiving a discount or the promotion will soon expire. (*Id.* ¶ 107, 109.)

> Through the 40% Off advertisements and the salespersons' statements, the [Closet Defendants] (1) persuade reasonable, bargain-seeking prospective customers to reduce their search for comparable, competing products, (2) lead them to falsely believe the [Closet Defendants] have sold, and have a good faith intention to continue to sell, their respective products at a higher, bona fide list price, (3) increase prospective and actual customers' perception for the transaction's value, and (4) increase the likelihood customers will return.

(*Id.* ¶ 108.) As a result, Casablanca's position in the marketplace has allegedly been "weakened by the diversion of prospective customers to [the Closet Defendants]." (*Id.* ¶ 109.) Furthermore, Casablanca's goodwill has apparently been damaged because "consumers have been led to falsely believe that [Closet Defendants] provide deeper discounts off their bona fide list prices than [Casablanca], implying that [Closet Defendants] provide a better value and are more cost efficient, customer-appreciative companies." (*Id.* ¶ 110.) Casablanca further alleges that Closet

3

Defendants created an enterprise that knowingly distributes deceptive false advertisements which constitutes mail and wire fraud as well as racketeering activity. (*Id.* ¶ 179.)

Defendants now move this Court to dismiss all claims in the FAC pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

### III. LEGAL STANDARD

#### A. Rule 12(b)(6) Generally

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

#### B. Pleading Fraud Under Rule 9(b)

Claims sounding in fraud must also comply with the heightened pleading requirements of Rule 9(b). *In re VeriFone Holdings Sec. Litig.*, 704 F.3d 694, 701

(9th Cir. 2012). Rule 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The heightened pleading requirements of Rule 9(b) are designed "to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993). "A pleading satisfies Rule 9(b) if it identifies 'the who, what, when, where, and how' of the misconduct charged." *MetroPCS v. SD Phone Trader*, 187 F. Supp. 3d 1147, 1150 (S.D. Cal. 2016) (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)). The plaintiff must "set forth more than the neutral facts necessary to identify the transaction [and] must set forth what is false or misleading about a statement, and why it is false." *Vess*, 317 F.3d at 1106.

While the Ninth Circuit has not held that Rule 9(b) applies to false advertising claims under the Lanham Act, courts within the Central District routinely apply Rule 9(b) to Lanham Act claims. *See, e.g.*, *EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*, 711 F. Supp. 2d 1074, 1085 (C.D. Cal. 2010) ("The Court agrees that Plaintiff's false advertising claims are grounded in fraud and that Rule 9(b) applies to the pleading of this claim.") Neither party disputes that Rule 9(b) applies to Plaintiff's False Advertising Lanham Act claims. (*See* Opp'n Closet Mot. ("Opp'n Closet"), ECF No. 33, Opp'n Melkonian Mot. ("Opp'n Melkonian"), ECF No. 32, Closet Mot. 5–7, Melkonian Mot. 5.) Accordingly, Plaintiff's False Advertising claims arising under the Lanham Act must meet Rule 9(b)'s higher threshold requirements for particularity.

## IV. DISCUSSION

Casablanca brings three causes of action for: (1) False Advertising in Violation of the Lanham Act 15 U.S.C. § 1125(a)(1)(B) ("Lanham Act") against the Closet Defendants; (2) Contributory False Advertising in Violation of the Lanham Act 15 U.S.C. § 1125(a)(1)(B) against Frank Melkonian and CBDF; and (3) Violation of

the Racketeer Influenced and Corrupt Organizations Act ("RICO") Act 18 U.S.C. § 1962(a), (b), (c) against the Closet Defendants. (*Id.* ¶¶ 158–182.) Defendants argue that the Court should dismiss each cause of action. The Court addresses each in turn.

### A. False Advertising

Casablanca's first cause of action alleges the Closet Defendants engaged in false advertising practices in violation of the Lanham Act. (FAC ¶¶ 158–171.) The Closet Defendants argue Casablanca failed to plead its first cause of action with the required particularity under Rule 9(b). The Court finds Casablanca's false advertising claim meets the requisite Rule 9(b) threshold for particularity.

Under Section 1125(a)(1)(B) of the Lanham Act, it is unlawful for:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact . . . which in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities[.]

15 U.S.C. § 1125(a)(1)(B). To state a false advertising claim under the Lanham Act, a plaintiff must meet the following elements: (1) "a false statement of fact by the defendant in a commercial advertisement about its own or another's product"; (2) "the statement actually deceived or has the tendency to deceive a substantial segment of its audience"; (3) "the deception is material, in that it is likely to influence the purchasing decision"; (4) "the defendant caused its false statement to enter interstate commerce"; and (5) "the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997). Casablanca need only meet the preliminary Lanham Act elements to meet the Rule 9(b) threshold requirement for particularity.

*Newcal Industries, Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1052 (9th Cir. 2008).

The Closet Defendants argue Casablanca fails to satisfy the first, second, and fifth elements necessary to establish a false advertising claim under the Lanham act. The Court addresses each contested element in turn.

In the present case, Casablanca satisfies the first element regarding "false statements" when it identified and provided specific examples of two separate types of alleged "false statements" that the Closet Defendants made in their advertising: "Former Price Comparison" statements and 'Continuous Sale" statements. (FAC ¶¶ 6, 7, 24, 26, 89, 95–102; *see also id.* Exs. 3, 8, 10, 15, 21–22.) Casablanca's allegations also satisfy the second element because it properly alleges the false statements contained in the Closet Defendants' advertising had the tendency to deceive and persuade customers to purchase their products. (FAC ¶¶ 25–29, 31–32, 105, 107, 161, 163, 166, 168.) Lastly, Casablanca met the fifth element by providing factual allegations that demonstrate its goodwill had been injured as a result of the Closet Defendants' advertised false statements: "Casablanca's goodwill has been damaged because consumers have been led to falsely believe that Closets by Design and Closet World provide deeper discounts off their bona fide list prices than does Casablanca, implying that Closets by Design and Closet World provide a better value and are more cost efficient, customer-appreciative companies." (FAC ¶¶ 110, 170).

For the aforementioned reasons, the Court finds Casablanca's first cause of action meets the heightened threshold pleading requirement set forth by Rule 9(b). Accordingly, the Court **DENIES** Closet Defendants' motion to dismiss Plaintiff's first cause of action.

**B.     Contributory False Advertising**

Casablanca's second cause of action alleges Melkonian and CBDF engaged in contributory false advertising practices in violation of the Lanham Act. (FAC ¶¶ 172–177.) The Closet Defendants argue Casablanca made no factual allegations that Melkonian and CBDF knowingly induced Closets by Design or Closet World to

engage in false advertising. (Melkonian Mot. 8, Closet Mot. 9–10.) The Court finds Casablanca's contributory false advertising claims meet the requisite elements.

The Ninth Circuit has not expressly ruled on whether contributory false advertising claims under the Lanham Act are viable claims. However, other Circuits and similar California district courts have found contributory false advertising claims to be legitimate and viable. *Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*, 797 F.3d 1248, 1275 (11th Cir. 2015) (providing the requisite elements that must be met for a viable contributory false advertising claim under the Lanham Act); *see, e.g.*, *Genus Lifesciences Inc. v. Lannett Co., Inc.*, 378 F. Supp. 3d 823, 847–49 (N.D. Cal. 2019) (considering contributory liability under *Duty Free*); *BioCell Tech. LLC v. Arthro-7*, No. 5:12-cv-00516-JVS (RNBx), 2012 WL 12892937, at *12 (C.D. Cal. Nov. 19, 2012) ("Contributory liability under the Lanham Act is based on the theory that one who intentionally induces another to directly violate the Act is contributorily liable."). Accordingly, the Court holds that a party may properly allege a Lanham Act claim for false advertising under the theory of contributory liability.

Under *Duty Free*, to "bring a claim for contributory false advertising under . . . the Lanham Act," the plaintiff must show that: (1) a "third party in fact directly engaged in false advertising that injured the plaintiff"; and (2) that "the defendant contributed to that conduct either by knowingly inducing or causing the conduct, or by materially participating in it." *Duty Free Americas*, 797 F.3d at 1277. Therefore, "[o]nce the plaintiff establishes the elements of a direct false advertising claim against a third party, it must allege that the defendant contributed to that conduct." *Id*. at 1277. Simply put, the plaintiff "must allege that the defendant . . . intended to participate in or actually knew about the false advertising" and "that the defendant actively and materially furthered the unlawful conduct—either by inducing it, causing it, or in some other way working to bring it about." *Id*.

### 1. Frank M. Melkonian

In the present case, Melkonian argues Casablanca made "no factual allegations that [Melkonian] knowingly induced [the Closet Defendants] to engage in false advertising, caused [the Closet Defendants] to allegedly engage in false advertising and/or materially participate in [the Closet Defendants'] allegedly false advertising." (Melkonian Mot. 8.) It is true Casablanca does not point toward exactingly specific evidence that Melkonian directly engaged in false advertising that injured Casablanca. (*See generally* FAC.) However, under *Duty Free*, a plaintiff need only allege the defendant "actually knew about the false advertising" and "that the defendant actively and materially furthered the unlawful conduct—either by inducing it, causing it, or in some other way working to bring it about." *Duty Free*, 797 F.3d at 1277. Casablanca does just this and provides more than enough factual allegations for the Court to determine Melkonian was—and continues to be—deeply involved in the day-to-day activities of Closets by Design, CBDF, and Closet World—which include the advertising of their products. (*Id.* ¶¶ 22–26.) Casablanca further alleges Melkonian is the CEO of each of the three corporate entities that make up the Closet Defendants. (*Id.* ¶ 22.) Additionally, Casablanca correctly points out Melkonian was CEO of Closet World when it began publishing the very first "Former Price Comparison" and "Continuous Sale" advertising statements at issue in the instant action. (*Id.* ¶ 24.) Furthermore, Casablanca *does* allege Melkonian is directly involved in the advertising of the Closet Defendants and by virtue of prior court decisions against Melkonian and his conduct, would know the false advertising currently at issue is unlawful. (*Id.* ¶ 26.) Therefore, Casablanca sufficiently states a claim against Melkonian for the purpose of contributory false advertising.

### 2. CBDF

In this case, the Closet Defendants recycle the same arguments used to attack Casablanca's contributory false advertising claim against Melkonian. (Closet Mot. 9.) Defendants claim Casablanca made no factual allegations that CBDF knowingly

9

induced or materially induced Closets by Design to engage in alleged false advertising. (*Id.*) However, Casablanca specifically cites to CBDF's position as the controlling franchisor for Closets by Design and expounds upon how the two corporate entities "work closely together to create, manage, distribute, and publish the advertising for Closets by Design." (FAC ¶ 41.) Casablanca then alleges Closets by Design—as a franchise of CBDF—publishes a website that CBDF uses to advertise its franchisees' businesses. (*Id.* ¶ 46.) Casablanca also alleges CBDF's Franchise Agreement reserves the right to "manages its franchisees with respect to their 'marketing, promotional and related campaigns.'" (*Id.* ¶ 70.) In fact, Casablanca highlights that CBDF's franchise agreement requires franchisees to "conform all advertising to the standards, specifications and requirements specified in writing by us, in our Manual or otherwise." (Opp'n Closet 10.) It is clear from Casablanca's allegations that CBDF is heavily involved in the false advertising alleged in the present case, and therefore these allegations satisfy the threshold requirements under *Duty Free*. Accordingly, the Court finds that Casablanca sufficiently states a claim against CBDF for contributory false advertising.[2]

In conclusion, the Court finds Casablanca's second cause of action meets all requisite elements for contributory false advertising under the Lanham Act. Accordingly, the Court **DENIES** Melkonian's and the Closet Defendants' motion to dismiss Plaintiff's second cause of action.

C. **RICO Violations**

Casablanca's third cause of action asserts the Closet Defendants' false advertising constitutes "mail and wire fraud," and is a pattern of racketeering activity in violation of 18 U.S.C. § 1962(a)–(c). (*Id.* ¶ 180.) The Closet Defendants argue Casablanca has failed to sufficiently plead an "enterprise," "racketeering activity," and

---

[2] The Closet Defendants also make a misplaced, peripheral argument that the Court should dismiss CBDF from this cause of action and the first cause of action because the FAC "contains no allegations that CBDF made any false statements or caused false statements to enter interstate commerce." (Closet Mot. 10.) For the same reasons discussed above detailing CBDF's role as the controlling franchisor and direct involvement with Closets by Design's advertisements, the Court rejects the Closet Defendants' peripheral argument.

"proximate cause". The Court finds that Casablanca fails to plead "racketeering activity" with the required particularity.

To properly allege a civil RICO claim, a plaintiff must allege that the defendant engaged in "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity and, additionally, must establish that (5) the defendant caused injury to plaintiff's business or property." *Black v. Corvel Enter. Comp Inc.*, 756 F. App'x 706, 708 (9th Cir. 2018) (citing 18 U.S.C. §§ 1962(c)). An "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). "Racketeering activity" includes "any act indictable under" any of a list of dozens of criminal statutes. 18 U.S.C. § 1961(1). A "pattern" "requires the commission of at least two acts of racketeering activity" within a ten-year period. 18 U.S.C. § 1961(5). Although two acts are required to establish a pattern, "[t]he Supreme Court has concluded . . . that Congress had a 'fairly flexible concept of a pattern in mind.'" *United States v. Freeman*, 6 F.3d 586, 596 (9th Cir. 1993) (quoting *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989)). Nevertheless, a plaintiff "must show that the racketeering predicates are related, and that they amount to or pose [an implicit or explicit] threat of continued criminal activity." *H.J.*, 492 U.S. at 239.

Additionally, when the racketeering activity alleged is fraud-based—including mail fraud and wire fraud—the heightened pleading requirements of Rule 9(b) apply. *Moore v. Kayport Package Express*, 885 F.2d 531 (9th Cir. 1989); *See also* 18 U.S.C. § 1341; 18 U.S.C. § 1343. In the RICO context, a plaintiff must "detail with particularity the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme." *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991). "A plaintiff may not simply lump together multiple defendants without specifying the role of each defendant in the fraud." *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*,

826 F. Supp. 2d 1180, 1201 (C.D. Cal. 2011) (citing *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007)).

Casablanca alleges that mail and wire fraud constitute the underlying racketeering activities. To allege mail or wire fraud, it is necessary to show (1) "a scheme or artifice to defraud," (2) the use of the United States mails or the United States wires, depending on whether mail or wire fraud is alleged, and (3) "the specific intent to deceive or defraud." *In re ZF-TRW Airbag Control Units Prod. Liab. Litig.*, 601 F. Supp. 3d 625, 742 (C.D. Cal. 2022) (citing *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1399 (9th Cir. 1986).

In the instant action, Casablanca provides multiple examples and instances of the Close Defendants utilizing mailing and internet services to distribute their alleged false advertising. (FAC ¶ 36–38, 50, 76–79, 80, 95, 97, 123, 132, 136, 144, 153.) Casablanca has also correctly stated that intent to defraud can be plead generally under Rule 9(b). (Opp'n Closet 13.) However, listing out the Closet Defendants alleged false advertising activity and then indirectly requesting the Court amalgamate said list does not *ipso facto* meet the particularity requirements of pleading mail and wire "racketeering activity" under Rule 9(b). Court requires Casablanca provide specific analysis and details on how the Closet Defendants activities specifically amounted to mail and wire fraud for the purpose of "racketeering activity" under 18 U.S.C. § 1962(a)–(c), as is required by Rule 9(b).

Accordingly, the Court **GRANTS** Defendants' motion to dismiss as to Casablanca's third cause of action **WITH LEAVE TO AMEND**.

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motions to Dismiss Plaintiffs' FAC. (ECF No. 27; ECF No. 28.)

**IT IS SO ORDERED.**

January 29, 2024

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**