O

# United States District Court
# Central District of California

| | |
|---|---|
| CASABLANCA DESIGN CENTER, INC., <br><br> Plaintiffs, <br><br> v. <br><br> CLOSETS BY DESIGN, INC. et al., <br><br> Defendants. | Case № 2:23-cv-02155-ODW (PDx) <br><br> **ORDER GRANTING MOTION TO DISMISS [44]** |

## I.  INTRODUCTION

Plaintiff Casablanca Design Center, Inc. ("Casablanca") brings this action against Defendants Closets by Design, Inc., CBD Franchising, Inc., Closet World, Inc., and Frank Melkonian (collectively, "Defendants") for violations under the Lanham Act and the Racketeer Influenced and Corrupt Organizations Act ("RICO Act"). (Second Am. Compl. ("SAC"), ECF No. 40.) Defendants move to dismiss Casablanca's RICO claims. (Mem. ISO Mot. Dismiss SAC ("Mot."), ECF No. 44.) For the following reasons, the Court **GRANTS** Defendants' Motion.[1]

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II.     BACKGROUND[2]

Closets by Design Inc. owns the Closets by Design® trademark and the exclusive right to sell Closets by Design® products in Southern California. (SAC ¶¶ 13, 43–44.) CBD Franchising, Inc. is a licensed franchisor that owns and operates Closets by Design® franchisees. (*Id.* ¶¶ 14, 53–58.) Closet World, Inc. owns and operates the closetworld.com website, which advertises Closet by Design® products. (*Id.* ¶¶ 34–35.) Melkonian is the Chief Executive Officer ("CEO") of all three corporate Defendants and their parent company, Home Organizers. (*Id.* ¶ 16.)

Casablanca is a direct competitor to Defendants and serves a similar market in the Southern California area. (*Id.* ¶ 2.) Casablanca alleges that Defendants engage in "deceptive discount price advertisement" by "falsely claiming that their products have previously sold at a higher 'original' price to induce customers to purchase merchandise at a purported marked-down 'sale' price." (*Id.* ¶¶ 4–5.) To market their products, Defendants promote these apparent "limited-time" discount sales to customers through online and paper advertisements that typically offer "40%" or "50%" discounts on the quoted price, as well as other incentives such as free installation and financing plans. (*Id.* ¶¶ 95–105, 114, 151.)

Over the last three years, Casablanca has lost out on potential customers who have instead opted for Defendants' products. (*Id.* ¶¶ 109–112.) Potential customers repeatedly informed Casablanca's CEO that they believed and were influenced by Defendants' "40% Off false advertising" and rejected "appointments or proposals from Casablanca unless Casablanca would discount its prices by the same 40% Off advertised by [Defendants]." (*Id.* ¶ 109.) Casablanca has lost "money and resources . . . to countervail the effects of Defendants' false advertising," including driving to sales appointments "only to be turned away by the customer because they believed they would receive 'percentage off' pricing that Casablanca could not

---

[2] The facts are drawn from Casablanca's SAC and the Court accepts as true for this motion all well-pleaded allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that well-pleaded factual allegations are accepted as true for purposes of a motion to dismiss).

honestly match." (*Id.* ¶ 111.) As a result of Defendants' false advertisements, Casablanca's CEO estimates it has lost at least "$2 million in man hours" answering and training its sales personnel on how to respond to the false advertising. (*Id.* ¶ 112.)

Based on the above, Casablanca filed the First Amended Complaint and asserted causes of action under the Lanham Act and the RICO Act. (First Am. Compl. ("FAC") ¶¶ 158–182, ECF No. 19.) Upon Defendants' motion, the Court dismissed Casablanca's RICO claims with leave to amend. (*See* First Mot. Dismiss ("First MTD"), ECF No. 27; Order Granting in Part First Mot. Dismiss, ECF No. 37.) On April 10, 2024, Casablanca filed the operative Second Amended Complaint, realleging the same claims. (SAC ¶¶ 158–214.) Defendants once more move to dismiss the RICO claims for failure to plead sufficiently under Federal Rule of Civil Procedure ("Rule" or "Rules") 12(b)(6) and 9(b). (*See* Mot.)

### III. LEGAL STANDARD

#### A. Rule 12(b)(6)

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as

true and . . . in the light most favorable" to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Where a district court grants a motion to dismiss, it should generally provide leave to amend unless it is clear the complaint could not be saved by any amendment. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Thus, leave to amend "is properly denied . . . if amendment would be futile." *Carrico v. City & County of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

**B.     Rule 9(b)**

When a plaintiff's claims are fraud-based, the heightened pleading requirements of Rule 9(b) apply. *Moore v. Kayport Package Express*, 885 F.2d 531 (9th Cir. 1989); *see also* 18 U.S.C. §§ 1341, 1343. Rule 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "A pleading satisfies Rule 9(b) if it identifies 'the who, what, when, where, and how' of the misconduct charged." *MetroPCS v. SD Phone Trader*, 187 F. Supp. 3d 1147, 1150 (S.D. Cal. 2016) (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)). The plaintiff must "set forth more than the neutral facts necessary to identify the transaction [and] must set forth what is false or misleading about a statement, and why it is false." *Vess*, 317 F.3d at 1106.

## IV.     DISCUSSION

Defendants present two reasons as to why this Court should dismiss Casablanca's RICO claims: (1) Casablanca cannot transform an "ordinary business dispute" into federal RICO claims; and (2) Casablanca fails to plead the racketeering

activity as required under Rule 9(b). (Mot. 5–8.)

As to Defendants' first argument, Casablanca rejects Defendants' assertion that this is an "ordinary business dispute." (Opp'n 3.) Instead, Casablanca claims this is a dispute between competitors. (*Id.* 4.) As the competitor in this action, Casablanca states it is not a direct victim of Defendants' false advertising—the consumers are—but it suffers derivative injury as a marketplace participant. (*Id.*) In so alleging, Casablanca brings forth the issue of standing—whether a market competitor, not directly injured, may bring a RICO action "to expose [Defendants'] fraud and stop it for the benefit of consumers, itself, and other competitors." (*Id.* 4–5.) The Court thus finds it necessary to consider whether Casablanca has standing to raise a RICO claim.[3]

To state a RICO claim, a plaintiff must allege that the defendant engaged in "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity and, additionally, must establish that (5) the defendant caused injury to plaintiff's business or property." *Black v. Corvel Enter. Comp Inc.*, 756 F. App'x 706, 708 (9th Cir. 2018) (citing 18 U.S.C. §§ 1962(c)). A RICO plaintiff can establish standing for a RICO claim by properly alleging the fifth element as to injury. *See Sedima v. Imrex Co.*, 473 U.S. 479, 496 (1985). To satisfy the fifth element, "plaintiffs must show proof of concrete financial loss, and not merely injury to a valuable intangible property interest." *Chaset*, 300 F.3d at 1086–87. "[A] plaintiff must prove that the defendant's unlawful conduct was not only a 'but for' cause of his injury but also the 'proximate cause' of the injury. . . ." *Harmoni Int'l Spice, Inc. v. Hume*, 914 F.3d 648, 651 (9th Cir. 2019). The proximate cause inquiry requires "some direct relation between the injury asserted and the injurious conduct alleged." *Id.* (quoting *Holmes v. Secs. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992)).

The Supreme Court has observed that "a RICO plaintiff cannot circumvent the proximate-cause requirement simply by claiming that the defendant's aim was to

---

[3] The Court may also raise the issue of standing sua sponte. *See Bernhardt v. County of Los Angeles*, 279 F.3d 862, 868 (9th Cir. 2002) (holding that "[t]he district court had both the power and the duty to raise the adequacy of [plaintiff]'s standing sua sponte").

increase market share at a competitor's expense." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 452 (1991). In *Anza*, the plaintiff brought RICO claims against its competitor for failing to charge customers the requisite New York sales tax and submitting fraudulent tax returns—which constituted mail and wire fraud. *Id.* at 454. The plaintiff alleged it suffered economic harm because defendant's acts of fraud allowed defendant to lower its prices and attract more customers, at the plaintiff's expense. *Id.* at 458. The Supreme Court held that the plaintiff failed to plead proximate cause to establish standing under RICO. *Id.* at 455, 458. The Court noted that the State was the direct victim of defendant's conduct because "the State was being defrauded and the State . . . lost tax revenue as a result." *Id.* at 458. The Court reasoned the connection between plaintiff's injury and defendant's injurious conduct was too attenuated because, although plaintiff's injury resulted from defendant's decreased prices, defendant "could have lowered its prices for any number of reasons unconnected to the asserted pattern of fraud." *Id.* Additionally, the plaintiff's "lost sales could have resulted from factors other than the competitor's alleged acts of fraud." *Id.* at 459. Since "[b]usinesses lose and gain customers for many reasons, . . . it would require complex assessment to establish what portion of [plaintiff's] lost sales were the product of [defendant's] decreased prices." *Id*.

This case shares similarities with *Anza*. Casablanca asserts that it lost potential customers, lost sales, and suffered weakened market position and damaged good will because it could not discount its prices by the same percentage advertised by Defendants. (SAC ¶¶ 30, 109–112.) Yet, Casablanca also admits it "could not honestly match" Defendants' lowered pricing. (*Id.* ¶ 111.) Like in *Anza*, Casablanca's injuries could have resulted from various factors outside of Defendants' alleged fraud—one being that Defendants offered better pricing that Casablanca acknowledges it cannot match, regardless of the deceptive purported "discounts." *See also Club One Casino Inc., v. Perry*, 837 F. App'x 459, 461 (9th Cir. 2020) (noting "[a] host of other market factors, including changes to the local economy, shifting

consumer preferences, or the manner in which [plaintiff] operated its business, could have caused [plaintiff]'s losses"). Accordingly, Casablanca fails to show concrete loss and proximate causation between its lost market opportunities and Defendants' conduct.

Casablanca's alleged injury, for money and resources spent to "countervail the effects of Defendants' false advertising," also fails to satisfy RICO's proximate cause requirement. (SAC ¶ 111.) Expenses incurred from the alleged wrongful conduct may be sufficient if they are proximately caused by the defendant's predicate acts. *Compare City of Almaty v. Khrapunov*, 956 F.3d 1129, 1133 (9th Cir. 2020) (finding no proximate cause where plaintiff did not show "that it was forced to spend its money or that it was otherwise shortchanged by Defendants' actions"), *with Harmoni Int'l Spice*, 914 F.3d at 652 (finding proximate cause where plaintiff was "forced to incur significant expenses responding to an administrative review because refusing to respond was not a viable option."). Here, Casablanca incurred expenses "travel[ing] to sales appointments," "answering futile sales calls," and "training its sales force." (SAC ¶ 111.) These appear to be expenses that Casablanca would normally incur to sell and promote its products. Casablanca fails to plead any facts showing it was required, as a result of Defendants' alleged fraudulent acts, to incur these expenses. These expenditures are thus "voluntary" and not proximately caused by Defendants' conduct. *See City of Almaty*, 956 F.3d at 1132.

Because Casablanca fails to allege that its injuries are a proximate result of Defendants' false advertising, the Court finds Casablanca lacks RICO standing.[4] The Court also finds that Casablanca cannot cure these deficiencies without contradicting its assertions that: (1) Casablanca lost sales because it cannot match Defendants' pricing and (2) Casablanca incurred expenses on sales-related activity to compete against Defendants. (SAC ¶¶ 111–112); *Schreiber Distrib.*, 806 F.2d at 1401.

---

[4] Having determined that Casablanca lacks standing to assert the RICO claims, the Court declines to address Defendants' additional argument that Casablanca fails to plead "racketeering activity" under Rule 9(b). (Mot. 6–8.)

Casablanca would need to directly contradict these statements to establish proximate cause. *Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014) (holding that "[a] party cannot amend pleadings to 'directly contradict an earlier assertion made in the same proceeding.'"). Furthermore, Casablanca already had an opportunity to amend its complaint as to proximate cause because this issue was raised in the Defendants' prior motion to dismiss. (*See* First MTD.) Accordingly, the dismissal is without leave to amend.

## V. CONCLUSION

The Court **GRANTS** Defendants' Motion to Dismiss Casablanca's RICO claims, (ECF No. 44.), **WITHOUT LEAVE TO AMEND**, as the Court finds "the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib.*, 806 F.2d at 1401.

**IT IS SO ORDERED.**

November 8, 2024

_____
         **OTIS D. WRIGHT, II**
    **UNITED STATES DISTRICT JUDGE**